JEFFERSON COUNTY, Respondent, vs. TIMMEL, Appellant.*

*January 10—February 5, 1952.*

*Motion for rehearing denied, with $25 costs, on April 8, 1952.

48

For the appellant there was a brief by *Brendemuehl & Brendemuehl* of Oconomowoc, and oral argument by *A. G. Brendemuehl* and *Curtis A. Brendemuehl*.

*Thorpe Merriman,* district attorney, for the respondent.

BROADFOOT, J.   On this appeal the defendant advances the following contentions:

(1) That the zoning ordinance, as amended by the 1947 amendments, was invalid because of the alleged failure to comply with the following statutory procedural requirements:

(a) No map was attached to the proposed ordinance or amendment.

(b) The original ordinance and 1947 amendments were not published.

(c) No written approval of the ordinance by the town board of the town of Farmington was filed with the county board.

(d) No public hearing was held by the town board before voting approval of the ordinance.

(2) That the town of Farmington had power to withdraw from the operation of the zoning ordinance.

(3) That the zoning law is invalid because:

(a) It attempted to impose regulations not authorized by the statutes.

(b) It is unconstitutional because it is an improper exercise of the police power.

(4) There was no violation of the ordinance by the defendant because he was entitled to continue the prior nonconforming use of Perry, his predecessor in title.

We shall consider these contentions in the order in which they were presented in defendant's brief as listed above.

At the trial the plaintiff county offered in evidence a printed pamphlet on the cover of which was printed:

> "Jefferson County Zoning Ordinance
>     "Revised to June 1, 1950
> "Don V. Smith, chairman
>     "County board of supervisors
> "James D. Hyer, county clerk
>     "Zoning committee:
>         "Ed. Brewin, chairman
>         "H. A. Wilke
>         "Math. N. Biwer"

and the pamphlet contained a complete text of the county zoning ordinance as amended from time to time, including the 1947 amendments, and also a complete text of the building-permit ordinance. There was attached a map of the county on which the various zoned districts were indicated,

including Conservancy District B along State Trunk Highway 30, and the title at the top of this map read:

"Jefferson County Zoning Map
"September, 1937
"Dec. 16, 1947"

The zoning ordinance as so printed in this pamphlet contained a clause which stated that the boundaries of the various zoned districts created by the ordinance "are shown upon the map of Jefferson county, attached hereto, being designated as the 'Zoning map of Jefferson county, Wisconsin,' as amended, dated December 16, 1947, and made a part of this ordinance."

Counsel for defendant objected to the offer in evidence of this pamphlet upon the following four grounds: (1) That the matter in issue arose in 1949; (2) that the pamphlet did not show that it was published by authority of Jefferson county; (3) that the pamphlet did not show that the zoning ordinance was signed by the clerk and countersigned by the chairman of the county board; and (4) that there was nothing to show that the map attached to the pamphlet was the map "referred to, identifying or made a part of the records of the county board either in the original zoning ordinance or in the amendment of 1948." The trial court received the pamphlet subject to the objections, but the memorandum decision later rendered by the trial court made it clear that he did not consider such objections had any merit.

Sec. 327.04, Stats., provides as follows:

"Matter printed in any newspaper, book, pamphlet, or other form purporting to be so published by any county, town, city, or village in this state as a copy of its ordinance, by-law, resolution, or regulation, is *prima facie* evidence thereof; and after three years from the date of such publication, such book or pamphlet shall be conclusive proof of the

regularity of the adoption and publication of the ordinance, by-law, resolution, or regulation."

Counsel for the defendant urges that this statute has no application here because the pamphlet bore no statement that its publication was authorized by the county and cites *Rosenberg v. Sheahan* (1912), 148 Wis. 92, 133 N. W. 645, in support of such contention. In that case the printed copy of a purported ordinance of the city of Milwaukee was offered in evidence and the only fact appearing thereon which might indicate its publication was authorized by the city was the name of the chief inspector of buildings printed at the foot of the flyleaf. The chief building inspector would hardly be deemed to have authority to publish a city ordinance. In the instant case the wording on the cover, bearing as it did the names and titles of the chairman of the county board and county clerk, would indicate that it was an authorized publication of the county. We, therefore, hold that the wording on the pamphlet cover was such as to indicate that the pamphlet purported to be published by the county so as to make the provisions of sec. 327.04, Stats., applicable thereto.

By reason of sec. 327.04, Stats., the pamphlet was *prima facie* evidence of the zoning ordinance, as amended, and of the building-permit ordinance. While the statute does not expressly state that the pamphlet is *prima facie* evidence of the publication of these ordinances, we hold that this is implied from the last clause in the statute which states that after three years from the date of publication the pamphlet is conclusive proof of the regularity of the adoption and publication of the ordinances. The map attached to the pamphlet being identified in the ordinance as the zoning map referred to in the ordinance, the pamphlet was by reason of the statute *prima facie* evidence that such map was the zoning map attached to the original ordinance, and amended by the

1947 amendments to show Conservancy District B along Highway 30.

We now come to the question of whether the defendant produced any evidence to rebut the *prima facie* presumption of the identity of the map and the due publication of the ordinance. As to the map the only evidence offered by the defendant was a certificate of the county clerk dated April 30, 1951, in which he certified that he had made diligent search in his office for the zoning map "referred to in the annual session Tuesday afternoon, November 16, 1937, of the county board of Jefferson county, Wisconsin, and subsequent proceedings, [and] such zoning map cannot be found and that the same has not been filed and has not been recorded or identified as part of said zoning ordinance." The fact that the county clerk did not have the map on file in his office on April 30, 1951, does not establish that the same was not properly attached to the original zoning ordinance, when enacted, and was not revised and attached to the 1947 amendments when the latter were adopted, and is insufficient to rebut the *prima facie* presumption raised by sec. 327.04, Stats. In the district attorney's opening statement to the trial court at the commencement of the trial he referred to a map exhibited to the court as the "official zoning map," and after the trial court received in evidence the pamphlet containing the zoning ordinance and having attached thereto a zoning map referred to in the ordinance, the trial court remarked, "the map that is attached to the exhibit is a facsimile to the one on the wall," evidently referring to the map mentioned by the district attorney in his opening statement. While such map on the wall was not offered in evidence, these facts are mentioned as affording a possible explanation why the county clerk was not able to find the original zoning map on file in his office on April 30, 1951.

The evidence offered by the defendant on alleged failure to publish was also a certificate of the county clerk dated

April 30, 1951, stating, "I find no proof of publication of original [zoning] ordinance or any amendments thereto." The failure of the county clerk to find any proofs of publication on file in his office falls far short of establishing that the ordinance, and amendments, were never published, and likewise fails to rebut the *prima facie* presumption of due publication raised by sec. 327.04, Stats.

As to the point raised that the pamphlet did not show that the ordinances had been signed by the chairman of the county board and the clerk, we construe sec. 327.04, Stats., to mean that when a pamphlet purporting to be published by a county containing county ordinances is received in evidence, such as the pamphlet in this case, the pamphlet is *prima facie* evidence of ordinances which have been duly adopted and properly signed by the chairman and clerk of the county board, and that it is not necessary that such signatures be reproduced or printed in the pamphlet as part of such ordinances. The defendant offered no evidence that the ordinances and amendments had not been properly signed after adoption.

Defendant contends that the zoning ordinance was not operative in the town of Farmington, in which defendant's premises are located, because of alleged failure of the town board to approve the ordinance in writing as required by sec. 59.97 (1) (a), Stats. 1947. As evidence to support such contention defendant relies on a certificate of the county clerk dated April 30, 1951, to the effect that he could then find no written approval of the town board on file in his office. However, there is also in evidence the proceedings of the county board for June 7, 1938, duly certified to by this same county clerk in which the county park commission reported to the county board in writing that the town boards of certain named towns, including the town of Farmington, had adopted resolutions approving the original zoning ordinance and that such resolutions were attached to the report

of the park commission. In other words, there was filed with the county board on June 7, 1938, a written resolution of the town board of the town of Farmington approving the ordinance. As to the approval of the 1947 amendments, there was received in evidence the proceedings of the county board for January 13, 1948, duly certified to by the county clerk in which the county park commission filed a written report with the county board in which it was stated that the town board of the town of Farmington had adopted a resolution on December 29, 1947, approving the zoning ordinance as amended by the 1947 amendments and that such resolution was attached to the report. We consider that there therefore was compliance with the statutory requirement that the written approval of the town board of the ordinance be filed with the county board, and what became of such filed resolutions of approval afterward is immaterial. A copy of the resolution adopted by the town board on December 29, 1947, approving the ordinance as amended by the 1947 amendments certified to by the town clerk was also received in evidence.

As we construe sec. 59.97, Stats. 1947, it is not required that a public hearing be held in each town as a condition precedent to the town board's voting approval of a zoning ordinance, or an amendment thereto, but only that the one county-wide hearing required by sec. 59.97 (2), Stats. 1947, be held. However, the report of the county park commission to the county board on the original ordinance, and on the 1947 amendments, show that in addition to the county-wide hearing, a separate hearing was held for the town of Farmington as to the original ordinance and a separate hearing for the town of Farmington and an adjoining town was held before the town board voted approval.

Sec. 59.97, Stats. 1947, which covers the subject of county zoning ordinances contains no provision permitting a town

board which has once approved a county zoning ordinance to later withdraw such approval. In the absence of such an expressed statutory provision permitting a town to withdraw or rescind a prior approval once given to a county zoning ordinance, it is our conclusion that neither the town nor the town board possesses such power of withdrawal or rescission, and that the attempted withdrawal or rescission by the special town meeting of the town of Farmington on April 16, 1951, was therefore a nullity. While it is generally true that where municipalities are granted power to enact an ordinance they possess the implied power to rescind the same, such principle is not applicable to the question here presented. Here the county board and not the town enacts the county zoning ordinance, and the approval of the town board is required only as a condition precedent to such county zoning ordinance being operative in the town.

Defendant further contends that the county zoning ordinance was invalid because it attempted to impose regulations not authorized by statute. Sec. 59.97 (1) (a), Stats. 1947, provided in part as follows:

"The county board of any county may by ordinance regulate, restrict, and determine the areas within which agriculture, forestry, and recreation may be conducted, the location of roads, schools, trades, and industries, the location, height, bulk, number of stories, and size of buildings and other structures, the percentage of lot which may be occupied, size of yards, courts, and other open spaces, the density and distribution of population, and the location of buildings designed for specified uses, and establish districts of such number, shape, and area, and may also establish setback building lines, and may further regulate, restrict, and determine the areas in and along or in or along natural watercourses, channels, streams, and creeks in which trades and industries, filling or dumping, erection of structures and the location of buildings may be prohibited or restricted, and may adopt an official map or maps which will show thereon such areas, outside the limits of incorporated villages and cities, as such

county board may deem best suited to carry out the purposes of this section. . . ."

The foregoing statute read substantially the same in 1937 when the enactment of the original zoning ordinance was initiated, as no changes material to this appeal were made between 1937 and 1947.

Defendant urges that because the foregoing statute grants the power to establish restrictive areas along watercourses and does not specifically state that the same power may be exercised along highways, the county is without power to establish restrictive areas along highways such as Conservancy District B in this instance. We find no merit in this contention because the statute confers the general power to determine areas anywhere in the county in which trades and industries may be restricted. It seems clear to us that the legislature did not intend to limit the county's power to establish restrictive districts only along watercourses but that the power to establish such districts along watercourses is expressly conferred in addition to the other general powers previously mentioned in the statute.

The fact that the legislature by sec. 84.103, Stats., has conferred upon the state highway commission the power to restrict the use of land along a highway, such as State Trunk Highway 30, does not preclude the county from doing so by proper zoning ordinance enacted pursuant to sec. 59.97 in the absence of the highway commission exercising such power in such a way so as to conflict with the county zoning ordinance. *Fox v. Racine* (1937), 225 Wis. 542, 545, 275 N. W. 513.

Defendant urges that the zoning ordinance is unconstitutional because it is an improper exercise of the police power. It is claimed that the ordinance is oppressive and arbitrary because it destroys fifty per cent of the value of defendant's property without any appreciable benefit to the public and because it permits nine intersections along Highway 30 to

be used for business purposes but denies the same privilege to the defendant and others.

It was stipulated between the parties that the value of defendant's premises, if he were permitted to use the same for the business purposes for which the same were devoted at the time of trial, would be $11,000, while the value of the same for private residence purposes would be but $5,500. In *State ex rel. Carter v. Harper* (1923), 182 Wis. 148, 153, 161, 196 N. W. 451, the constitutionality of the city of Milwaukee zoning ordinance was sustained. The court in its decision stated:

"If in the prosecution of governmental functions it becomes necessary to take private property, compensation must be made. But incidental damage to property resulting from governmental activities, or laws passed in the promotion of the public welfare, is not considered a taking of the property for which compensation must be made. . . .

"There remains a further question to be considered. Appellant claims that the ordinance is unreasonable in that it prohibits him from enlarging the business to which his property was devoted prior to the passage of the ordinance. The reasonableness of this feature of the ordinance, as well as its main purpose, is subject to judicial review. Where, however, a given situation is conceded to present a proper field for the exercise of the police power, the extent of the interference is a matter which lies very greatly in legislative discretion. *Mehlos v. Milwaukee,* 156 Wis. 591, 146 N. W. 882. If the appellant has acquired a vested right to enlarge his business, then every other person having an embryo business in a residential section must be accorded the same privilege, and an infant industry may grow to mammoth proportions, thereby to a very large extent defeating the purposes of the regulation.

"In *Hadacheck v. Los Angeles,* 239 U. S. 394, 36 Sup. Ct. 143, a brick yard of the value of $800,000, situated far outside the city limits when acquired, was suppressed after it had been included in the city limits. If property of that nature and of that value must yield to the supremacy of the police power, it is difficult to see how a regulation prohibiting

appellant's enlargement of his business can be held unreasonable. Then, too, it may be remarked that an ordinance permitting those already engaged in business to enlarge the same while prohibiting all others from engaging therein, would not tend to make the ordinance less vulnerable. See *People ex rel. Roos v. Kaul,* 302 Ill. 317, 134 N. E. 740, and cases there cited."

In *Hayes v. Hoffman* (1927), 192 Wis. 63, 70, 211 N. W. 271, this court in upholding a setback building-line provision of a city zoning ordinance that severely lessened the building area of a corner lot to its great diminution in value, stated:

"There are in almost all police regulations instances where the law operates with hardship and seems oppressive. That such is the fact, however, does not render the regulation invalid or unconstitutional. In contemplation of law, the benefits equal the burdens."

Likewise in *Eggebeen v. Sonnenburg* (1941), 239 Wis. 213, 219, 1 N. W. (2d) 84, this court declared:

"The law of this state recognizes the doctrine that incidental damage to property resulting from governmental action or laws passed in the promotion of public welfare, health, and safety is not considered a taking of the property."

58 Am. Jur., Zoning, p. 1016, sec. 140, states:

". . . However, the pecuniary loss is only one of the considerations on which the final decision is to be based, and the fact that a zoning ordinance causes a loss of revenue or profits, or a depreciation of the value of the property, or makes it more difficult for the owner to sell or dispose of the same, does not necessarily invalidate the ordinance as a confiscatory, or unreasonable or arbitrary exercise of the police power. In this respect, it has been declared that the public health, safety, morals, and general welfare are superior in importance to the pecuniary profits of the individual owner."

In the instant case defendant's predecessor in title, Perry, constructed the building after the zoning ordinance, with

the 1947 amendments thereto, had been enacted under a permit which restricted the use of the building for residential purposes, after his application for permit for a building to be used for business purposes had been denied. This is not a case therefore of the enactment of a zoning ordinance causing a diminution of existing property values.

In considering the constitutionality of the instant ordinance, the vital question to be considered is whether the same constitutes a reasonable exercise of the police power delegated to the county by the legislature when it enacted sec. 59.97, Stats., conferring power on county boards to enact zoning ordinances. According to the authors of the note appearing in 11 Wisconsin Law Review, 543, Wisconsin was the first state in the Union to grant counties comprehensive power to zone rural areas.

In the case of *Euclid v. Ambler Realty Co.* (1926), 272 U. S. 365, 47 Sup. Ct. 114, 71 L. Ed. 303, the United States supreme court held that the validity of zoning ordinances rested upon "some aspect of the police power, asserted for the public welfare," and sustained the validity of a village zoning ordinance on the basis that it bore a rational relationship to the *health and safety of the community*. This court in *State ex rel. Carter v. Harper, supra,* in which the validity of the zoning ordinance of the city of Milwaukee was upheld, stated at page 154:

"In this day none will dispute that government in the exercise of its police power may impose restrictions upon the use of property in the interest of public health, morals, and safety. That the same restrictions may be imposed upon the use of property in promotion of the public welfare, convenience, and general prosperity is perhaps not so well understood, but, nevertheless, is firmly established by the decisions of this and the federal supreme court."

State Trunk Highway 30 is the most direct thoroughfare between the cities of Madison and Milwaukee, and the

learned trial court pointed out in his decision that there are long straightways across Jefferson county conducive to speed. A right of way for a four-lane, double, divided, concrete highway was condemned and the north strip of such highway has been completed. It has been constructed to the most advanced standards of modern highway construction. The testimony discloses that there is fair view of defendant's premises for a substantial distance on the part of persons in vehicles approaching from the west, but approaching from the east, because of the presence of a hill to the east of defendant's premises, automobiles come almost directly upon defendant's premises before the riders therein can see it. The presence of business places, such as filling stations and taverns along a busily traveled highway, such as Highway 30 where traffic moves at a considerable speed, present a traffic hazard as a result of vehicles leaving the highway to patronize such places of business and thereafter again entering the highway. Such traffic hazard is aggravated where the view of such business premises is obscured from at least one direction due to the tendency of drivers who desire to stop suddenly reducing speed or turning off the highway without giving a timely signal of such intention to turn. Furthermore, where the view is obscured the hazard resulting from such vehicles leaving the premises and again entering the highway is greater than if there were an unobscured view for a long distance in either direction. Certainly the zoning ordinance in this instance, as amended so as to establish Conservancy District B along State Trunk Highway 30 barring business places from such district, was in the interest of the general welfare as promoting safety on a main-traveled highway.

The trial court, in addition to holding that the zoning ordinance was in the interest of promoting safety, also stated in his decision, "The present Highway 30 is beautiful. For

esthetic reasons this beauty should be preserved." This court apparently has not heretofore upheld a zoning ordinance on the ground of esthetic reasons. It is pointed out in 58 Am. Jur., Zoning, p. 959, sec. 30, that the general rule is that the zoning power may not be exercised for purely esthetic considerations, but that there are authorities which indicate that the rule on this subject is undergoing development and it has been declared by some authorities that "in relation to the validity of zoning laws, that esthetic considerations are not wholly without weight, and may be taken into account where other elements are present to justify the regulation under the police power." We find it unnecessary in upholding the validity of the ordinance to resort to esthetic considerations because the promotion of safety on Highway 30 is sufficient to support the exercise of police power.

In zoning the territory along Highway 30 as Conservancy District B, the county zoning ordinance excluded from Conservancy District B nine intersections on this highway where filling stations and other retail businesses might be established in a limited area at each of these intersections, but new buildings or structures have to be erected so as to be a certain minimum distance from the highway. The view at all nine of these excepted intersections was unobstructed to persons in vehicles approaching from either direction. Because of the permission of business uses of the areas at these nine intersections, defendant contends that the same constitutes "spot zoning" rendering the ordinance discriminatory and void. In *Marshall v. Salt Lake City* (1943), 105 Utah, 111, 126, 141 Pac. (2d) 704, 149 A. L. R. 282, the zoning ordinances of Salt Lake City zoned certain small areas at the intersections of certain main thoroughfares so as to permit stores and other business uses in territory otherwise zoned for residential purposes. The Utah court held the ordinance valid and in its decision stated:

"Here the general zoning plan of the city set within a reasonable walking distance of all homes in residential "A" districts the possibilities of such homes securing daily family conveniences and necessities, such as groceries, drugs, and gasoline for the family car, with free air for the tires and water for the radiator, so the wife and mother can maintain in harmonious operation the family home, without calling Dad from his work to run errands. To effectuate this objective, there were created, on a definite, unified plan, at the intersections of definite fixed through streets, these small residential utility districts, limited and confined to such uses. Being set up on such a definite and comprehensive plan it cannot be said to be arbitrary or discriminatory. Neither does it come within the scope of the cases dealing with 'spot zoning' which are based upon special privileges granted, or restrictions imposed, without regard to a unified plan. The cases relative to 'spot zoning' are generally cases where a particular small tract, within a large district was specially zoned *so as to impose upon it restrictions* not imposed upon the surrounding lands, or grant to it special privileges not granted generally, not done in pursuance of any general or comprehensive plan. *Geisenfeld v. Village of Shorewood,* 232 Wis. 410, 287 N. W. 683; *State ex rel. Tingley v. Gurda,* 209 Wis. 63, 243 N. W. 317; *Rowland v. City of Racine,* 223 Wis. 488, 271 N. W. 36, 38; where it was also held that one who attacks a zoning ordinance 'must show that it is unreasonable in respect to [his] property.'"

In the instant case there was a reasonable basis for the exercise of the discretion of the county board placing defendant's premises in a restricted district in which business uses were prohibited while permitting business uses at nine other intersections in the county along Highway 30. Such reasonable basis was the fact that the view of people approaching the intersection at which defendant's premises from the east was obstructed by the hill, while the view of the nine intersections zoned for business purposes was open from either direction. If there is any reasonable basis for the exercising of legislative discretion by the zoning authority the same

cannot be disturbed on judicial review. 8 McQuillin, Mun. Corp. (3d ed.), p. 529, sec. 25.279.

We now reach the final argument advanced by defendant that there was no violation by the defendant because his use of the premises was but a continuance of the prior nonconforming use of his predecessor in title, Perry. The plaintiff county contends that the defendant is now barred from advancing such claim because Perry did not appeal to the board of adjustment from the county clerk's refusal to grant his application for building permit dated March 30, 1949, in which he specified the new building was to be used for a retail store, but instead filed a new application for permit for the same building designating that it was to be used only as a residence. The zoning ordinance created a board of adjustment and provided that any person aggrieved by any decision of an administrative officer under the ordinance might appeal to the board of adjustment. The building-permit ordinance also provided that anyone aggrieved by a ruling of the county clerk might appeal such ruling to the board of adjustment set up under the zoning ordinance. Sec. 59.99, Stats., authorizes the creation of such a board of adjustment by counties in connection with the exercise of the zoning power conferred on them by sec. 59.97, and subs. (10) and (11) of sec. 59.99 provide for court review of the decisions and rulings of the board of adjustment.

8 McQuillin, Mun. Corp. (3d ed.), p. 538, sec. 25.283, states that the authorities are in conflict as to whether a property owner must first pursue and exhaust the administrative remedy available to him under a zoning ordinance or statute before resorting to the courts for injunctive or other relief. We believe the sounder rule is that which holds that if a zoning ordinance provides for an appeal to a board of adjustment created pursuant to a statute similar to sec. 59.99 from an adverse ruling of an administrative officer

or board in administering the ordinance, and court review of the decision or order of the board of adjustment is specifically provided for by statute, such remedy is exclusive of all other remedies and must be exhausted before a party can resort to the courts for other relief except in cases where the validity of the ordinance itself is attacked. An assertion of prior nonconforming use in itself does not constitute an attack upon the validity of the zoning ordinance.

By analogy it would seem that where a property owner makes application for a building permit for the erection of a building for a business use in a district in which business uses are prohibited by a zoning ordinance, and such permit is denied and the property owner does not appeal such ruling to the board of adjustment but instead files an application to erect a building for residential use and secures a permit to so erect such building, he should be deemed thereby to have waived the right to later assert as a defense, in an action to enjoin him from using the property for a use prohibited by the ordinance, that he is entitled to use the new building for business purposes because of some prior nonconforming use. The defendant as successor in title to Perry stands in his shoes and is in no better position to assert the defense of nonconforming use than Perry.

Defendant complains of the failure of the county to have recorded all nonconforming uses in the office of the register of deeds. Sec. 59.97 (7) (d), Stats. 1947, provides that it is not necessary for counties to record nonconforming uses that issue building permits as a means of enforcing the ordinance or checking nonconforming uses. Jefferson county utilized the building-permit method of checking nonconforming uses.

Even if the defendant were not bound by Perry's waiver of the right to assert a prior nonconforming use by failure to appeal to the board of adjustment from the denial of his first application for a building permit, the fact that Perry

had for some time before the adoption of the 1947 amendments to the zoning ordinance sold surplus gasoline from a pump located some fifty to seventy-five feet distant from the new building erected in 1949 would not permit the enlargement of such use to the extent here claimed by the defendant. 8 McQuillin, Mun. Corp. (3d ed.), p. 396, sec. 25.206.

*By the Court.*—Judgment affirmed.