COUNTY OF SAUK, a municipal corporation, Plaintiff-Appellant and Cross-Respondent-Petitioner,

v.

Warren TRAGER, Defendant-Respondent and Cross-Appellant.

Supreme Court

*No. 81–2127. Argued February 27, 1984.—*
*Decided April 24, 1984.*

(Also reported in 346 N.W.2d 756.)

For the petitioner there were briefs and oral argument by *Eugene R. Dumas,* corporation counsel.

For the defendant-respondent and cross-appellant there was a brief by *John M. Langer,* Baraboo, and oral argument by *Mr. Langer.*

SHIRLEY S. ABRAHAMSON, J. This is a review of a published decision of the court of appeals, *County of Sauk v. Warren Trager,* 113 Wis. 2d 48, 334 N.W.2d 272 (1983), affirming a judgment of the circuit court for Sauk county, James R. Seering, Circuit Judge. The circuit court dismissed an action brought by Sauk county against Warren Trager for a forfeiture for violations of the Sauk county zoning ordinance, for an order requiring Trager to move a garage, and for an injunction against further violation of the ordinance. The court of appeals affirmed the judgment of the circuit court, and we affirm the decision of the court of appeals.

At issue is whether Trager's failure to seek judicial review of an adverse decision of the Sauk County Board of Adjustment pursuant to sec. 59.99, Stats., precludes him from asserting the invalidity of the board's decision in a circuit court action brought by the county to enforce the board's decision. If Trager is not precluded from asserting the defense in this enforcement action, the issue then is whether the Sauk County Board of Adjustment correctly concluded that Trager violated the Sauk county zoning ordinance. We hold that Trager is not precluded from asserting his defense and that the Board erred in its interpretation of the ordinance.

I.

The parties filed a stipulation of facts with the circuit court and thus the relevant facts are not in dispute. In 1960 Trager and his father began constructing the foundation for a garage on their property located in the town of Baraboo at the intersection of Pit Road, a town road, and U.S. Highway 12 in Sauk county. The edge of the foundation closest to the road was located 33 feet south of the centerline of Pit Road. Work on the garage ceased after 1960 until 1974 when Trager put electricity into the garage. In 1978 he began constructing a wooden frame superstructure on the foundation, although he did not have a building permit for the construction.

In 1970 the town of Baraboo became subject to the Sauk county zoning ordinance which required that a building permit be obtained for constructing buildings and that the buildings be located at least 63 feet from the centerline of certain roads, including Pit Road. Prior to 1970 the town did not require a building permit or this setback.

On December 29, 1978, the Sauk County Office of Planning and Zoning informed Trager that his garage violated the 63-foot setback line and that he should move the garage or seek necessary approval from the Sauk County Board of Adjustment (Board) for continued construction. He was further advised that if he failed to take one of these alternative measures, an enforcement action would be brought against him in circuit court.

At Trager's request the Board held a hearing on February 23, 1979. This court has received no transcript or record of the hearing, and it is therefore impossible to determine exactly which sections of the zoning ordinances were discussed and what defenses Trager raised. It is clear from the exhibits of correspondence in the

record that the office of planning and zoning believed that Trager's garage violated the setback requirements, that Trager's garage was a nonconforming use which had been abandoned for more than 12 months, and that no further construction or use of the garage is permissible until Trager complies with the zoning ordinance.

The Board's decision of February 27, 1979, was adverse to Trager. The Board concluded that Trager should not be granted a setback variance since he would suffer little hardship if he were required to move the building or construct the garage elsewhere on his land.[1] Furthermore, the Board concluded that Trager did not come within the exception that the ordinance provides for building permits because $500 worth of work had not been completed on the garage before 1970.

Trager submitted further material to the Board in support of a request for reconsideration of the February 27, 1979, decision. On March 30, 1979, the Board reaffirmed its previous decision. The Board informed Trager that he had 30 days after the March 30 decision "in which to initiate any appeal that [he might] desire." Trager did not appeal the Board's decision but continued to work on his garage without a building permit. On March 11, 1980, the county initiated this enforcement action in circuit court.

## II.

We turn first to the issue of whether Trager is precluded from contesting the validity of the Board's decision.

---

[1] Sec. 7.16(4)(c) of the Sauk county zoning ordinance authorizes the board to grant a variance from the terms of the ordinance as will not be contrary to the public interest "where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the ordinance . . . provided however that no such variance shall have the effect of allowing, in any district, uses prohibited in that district."

The county argues that the exclusive means by which Trager may obtain judicial review of the Board's decision is through statutory certiorari proceedings as established by sec. 59.99, Stats. 1979, and that Trager is precluded from challenging the validity of the Board's decision in this action because he has not sought judicial review of the Board's decision under sec. 59.99. The county thus urges that Trager is precluded from judicial review because he has not exhausted the remedies provided by sec. 59.99, Stats. 1979.

Sec. 59.99, Stats. 1979, provides that any person aggrieved by any decision of a board of adjustment may, within 30 days after the filing of the decision, present to a court of record a verified petition that the decision is illegal. Upon presentation of the petition the circuit court may allow a writ of certiorari directed to the board to review the board's decision. The circuit court may take evidence or appoint a referee to take evidence and may reverse, affirm, or modify the decision brought up for review.[2]

---

[2] Sec. 59.99, Stats. 1979, provided:

"(10) COURT REVIEW. Any person or persons, jointly or severally, aggrieved by any decision of the board of adjustment, or any taxpayer, or any officer, department, board or bureau of the municipality, may present to a court of record a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of illegality. Such petition shall be presented to the court within thirty days after the filing of the decision in the office of the board.

"(11) CERTIORARI. Upon the presentation of such petition the court may allow a writ of certiorari directed to the board of adjustment to review such decision of the board of adjustment, and shall prescribe therein the time within which a return thereto must be made and served upon the relator's attorney, which shall not be less than ten days and may be extended by the court. The allowance of the writ shall not stay proceedings upon the decision appealed from, but the court may, on application, on notice to the board and on due cause shown, grant a restraining order."

This section was amended by sec. 5, ch. 289, Laws of 1981, effective April 30, 1982.

This court has, on numerous occasions, recognized the doctrine of exhaustion of administrative remedies. Although the exhaustion doctrine is sometimes expressed in absolute terms and in terms of a court's subject-matter jurisdiction, we have not applied the doctrine in this manner. The cases demonstrate that sometimes exhaustion is required and other times not and that the exhaustion doctrine has numerous exceptions. Our court has been willing to assume jurisdiction of a case, notwithstanding a party's failure to exhaust administrative remedies, where the court finds that the reasons supporting the exhaustion rule are lacking. *Nodell Investment Corp. v. Glendale,* 78 Wis. 2d 416, 424–26, 254 N.W.2d 310 (1977).

To determine the application of the exhaustion doctrine we must look at the circumstances under which the doctrine arises and the reason for the doctrine, and then balance the advantages and disadvantages of applying the doctrine in the particular case.

The exhaustion doctrine is typically applied when a party seeks judicial intervention before completing all the steps prescribed in the hierarchy of administrative agency proceedings. The general rule developed in these cases is that a party must complete all administrative agency proceedings before coming into court. Thus in *Jefferson County v. Timmel,* 261 Wis. 39, 63, 51 N.W. 2d 518 (1952), for example, this court concluded that the statutory procedure set forth in sec. 59.99 for appeal from an adverse ruling of an administrative officer to the board of adjustment is exclusive of other remedies and must be exhausted before a party can resort to the courts for relief.

The purpose of the exhaustion doctrine in this type of case is to allow the administrative agency to perform the functions delegated to it by the legislature without interference by the courts. The doctrine allows the

agency to apply its special competence and expertise and to make a factual record. *Nodell Inv. Corp. v. Glendale,* 78 Wis. 2d 416, 254 N.W.2d 310 (1977).

In this case all steps in the administrative agency process have been completed. The office and the Board have had an opportunity to perform their functions, to compile a factual record, to interpret and apply the ordinance, and to correct any errors they might have made.

The exhaustion doctrine is also applied when a party does not follow the statutorily prescribed procedure for judicial review of an agency decision and seeks judicial review in a different forum or proceeding. In such a case it is generally the party aggrieved by an administrative decision who seeks judicial assistance by initiating an action challenging the agency's decision.

In a continuing line of cases this court has set forth the general principle that where a statute specifies a direct method of judicial review of agency action, the method so prescribed is regarded as exclusive. Thus in *Jefferson County v. Timmel,* 261 Wis. 39, 63, 51 N.W. 2d 518 (1952), in which this court construed sec. 59.99, we said the statutory procedure for judicial review of the decision or order of the board of adjustment is exclusive of all other remedies and must be exhausted before a party can resort to the courts for other relief except in cases where the validity of the ordinance itself is attacked.

The purpose of the exhaustion rule in this type of case is not to achieve a proper allocation of functions between administrative agencies and courts but to achieve finality of administrative agency decision-making, to maintain orderly judicial process, to prevent a multiplicity of suits, and to achieve economy of judicial time. The exhaustion rule is a rule of policy, convenience, and discretion, not a rule regulating the jurisdiction of

the court. *State ex rel. First Nat'l Bank v. M&I Peoples Bank,* 82 Wis. 2d 529, 537–38, 542–43, 263 N.W.2d 196 (1978).

In this case Trager has not taken the initiative in challenging the administrative decision in the courts. Trager is the reluctant defendant in a court action initiated by the administrative agency.

This case thus involves still another situation in which the exhaustion doctrine has been applied. In this third type of case, the administrative agency initiates a civil proceeding to enforce the agency's decision and the party aggrieved by the decision has not sought judicial review pursuant to the statutes but seeks to defend against the enforcement action by challenging the validity of the agency decision.

Few cases or commentators discuss this application of the exhaustion doctrine.[3] The purpose of the exhaustion rule in this third type of case is the same as in the second type of case—to achieve finality of administrative agency decision-making, to maintain orderly judicial process, to prevent a multiplicity of suits, and to achieve economy of judicial time.

In determining the appropriateness of the application of the exhaustion doctrine in this type of case, we must first determine whether the legislature has precluded Trager from asserting this defense in an enforcement action. In other words, we must determine whether the legislature intended the statutorily prescribed means of judicial review of the administrative agency to bar a challenge to agency action in a different judicial forum

---

[3] See, *e.g., State v. City of Green Bay,* 96 Wis. 2d 195, 200, n. 4, 291 N.W.2d 508 (1980); 2 Cooper, *State Administrative Law* 577–81 (1965); 3 Davis, *Administrative Law Treatise,* ch. 20 (1958), vol. 4 ch. 26 (2d ed. 1983); Jaffee, *Judicial Control of Administrative Acts,* ch. 11, esp. pp. 450–458 (1965); Levinson, *Enforcement of Administrative Decisions in the United States and in France,* 23 Emory L.J. 11 (1974).

or under different judicial procedures. Professor Davis writes that a defendant in a civil or criminal proceeding brought to enforce an administrative order or regulation may defend on the ground of invalidity of the order, or regulation, in the absence of affirmative legislative input to the contrary. 3 Davis, *Administrative Law Treatise,* sec. 23.07, pp. 317, 320 (1958).

The Wisconsin legislature has not stated whether it intended sec. 59.99 to be the exclusive method of judicial review. At least one state administrative procedure act provides that the validity of agency action can be challenged in an enforcement action only if the petition for enforcement was filed during the period in which the aggrieved person could petition for judicial review of the agency action. Levinson, *The Florida Administrative Procedure Act: 1974 Revision and 1975 Amendments,* 29 U. Miami L. Rev. 619, 691–92 (1975). In *Timmel, supra,* where the party failed to comply with the statutorily prescribed administrative and judicial review procedures, we did conclude, without discussion, that the sec. 59.99 judicial review procedure was exclusive and that Timmel waived his right to raise defenses in a later enforcement action.

We believe the general rule set forth in *Timmel* is correct. The decision of an administrative agency is legally binding although subject to review and the aggrieved party should comply with the agency decision or initiate a challenge promptly and in accordance with the applicable statutes. A party who wants judicial review of an agency decision should carry the burden of initiating a petition for review rather than defying the agency and awaiting an enforcement action.

Even if the sec. 59.99 statutory review procedure is intended by the legislature to be exclusive, the exhaus-

tion doctrine will not be applied if the review procedure prescribed in the statute is, for any reason, inadequate. The county asserts that review under sec. 59.99 is simple, speedy, and more than adequate. We agree with the county that sec. 59.99 provides for a timely and simple procedure for review, and that the scope of statutory certiorari under sec. 59.99(10), Stats. 1979, is very broad. Sec. 59.99 would have provided Trager with full access to judicial review as to issues of both fact and law. Moreover, sec. 59.99 allows the court to take additional evidence and make additional findings of fact and conclusions of law whenever it is necessary to do so. *Browndale International v. Board of Adjustment*, 60 Wis. 2d 102, 208 N.W.2d 121 (1973). Sec. 59.99 serves the interests of the individual and the agency by providing a means for the effective resolution of controversies. We therefore conclude that the sec. 59.99 judicial review procedure provides adequate relief and should generally be viewed as the exclusive method for challenging the Board's decision in court.

Our inquiry, however, does not end with concluding that the statutory review procedure is intended as exclusive and is adequate. As we said previously, this court has recognized that it need not apply the exhaustion doctrine in a rigid, unbending way. There may be exceptional cases in which the court will not bar a defense by the application of the exhaustion doctrine. A court need not apply the exhaustion doctrine when a good reason exists for making an exception. In exercising its discretion in whether to apply the exhaustion doctrine, the court should balance the litigant's need for judicial review, the agency's interest in precluding the litigant from defending the action, and the public's interest in the sound administration of justice.

Under the circumstances of this case, we conclude that Trager should not be foreclosed from asserting defenses in this enforcement action.[4] We reach this conclusion because of the existence of several factors.

First, the question presented to the court in this enforcement action is the same question as would have been presented to a court in a sec. 59.99 statutory certiorari review and the procedures in both types of review appear to be substantially similar. In both statutory certiorari and in this enforcement action the question before the court is the validity of the Board's decision. Both parties are able to develop a factual record in this action and in a sec. 59.99 review. It appears that the court's standard of review of the agency decision is the same in this action and in a 59.99 review.

Second, in this case there is no dispute as to the facts, as to an exercise of the agency's discretion, or as to whether the ordinance applies to these facts. The only question presented in this enforcement action and the only question that would have been presented on statutory certiorari is the meaning of the ordinance. The only issue is whether the Board proceeded on the correct interpretation of the ordinance. Although the Board's interpretation of the ordinance may be entitled to some weight, the court—whether in a statutory certiorari

[4] The county relies on the *Timmel* case. We conclude *Timmel* is distinguishable from this case. In *Timmel* the reasons supporting application of the exhaustion rule outweighed the interests in recognizing an exception to the rule. The *Timmel* court seemed to rely on the fact that *Timmel's* predecessor in interest circumvented agency action and prevented any meaningful judicial review of the agency's application of the ordinance. In addition, it is clear that Timmel's defense of prior nonconforming use had no merit. Allowing the defendant in *Timmel* to assert his defenses would have violated the concepts of administrative autonomy, judicial efficiency and economy, and fair play.

proceeding or in this action—need not accept the Board's interpretation. The issue thus presented is one of law, an issue within the court's expertise, an issue which should be presented to a court. And it is apparently of no significance in this case that the issue would have been brought to the court more promptly through a sec. 59.99 proceeding.

Third, the pleadings and the stipulation of facts in this case indicate that the Board's decision is suspect on its face. A court is reluctant to apply the exhaustion rule and preclude a person from raising what appears to be a sound defense unless the policies favoring preclusion outweigh considerations of equity.[5]

Fourth, in this case the application of the exhaustion doctrine is harsh. Trager would be stripped of his only defense and he might suffer a harsh result—he might forfeit as much as $5,000 and be required to move or destroy the foundation. Courts have been reluctant to invoke the exhaustion doctrine if it results in harsh consequences unless the interests underlying the exhaustion rule clearly outweigh the burden imposed.

The county argues that if the court fails to require exhaustion in the present case persons aggrieved by a Board's decision will deliberately and persistently bypass statutory certiorari. The county urges us to prohibit Trager from challenging the Board's decision in this enforcement action to encourage orderly process and procedure.

---

[5] "In many circumstances courts do and should get an impression of the merits before deciding exhaustion questions. They should give themselves the freedom to do so in all circumstances, and, across the board, they should acknowledge that they do so. After all, a court's view of the merits is sometimes a necessary ingredient of the exhaustion decision . . . What is needed is a general, open, and frank rejection of the logical idea that the court may not decide the merits without first deciding that exhaustion law allows it to decide the merits." 4 Davis *Administrative Law Treatise*, sec. 26:2, 420–421 (2d ed. 1983).

We agree with the county that aggrieved parties should use sec. 59.99 statutory certiorari. But we do not think that our allowing Trager to defend this action will encourage others to avoid sec. 59.99 review. Not many will be foolhardy enough to forego judicial review and run the risk of prosecution, of being barred from asserting defenses in an enforcement action, and of paying a substantial forfeiture. Regardless of the outcome of this case there is sufficient incentive for an aggrieved party to comply with sec. 59.99 review procedures.

In the present case there appears to be no significant interest to be served by applying the exhaustion doctrine. On balance, we think that the adverse consequences that would result from applying the exhaustion rule outweigh its benefits in this case and conclude that this case should be treated as an exception to the exhaustion rule. Although it is in the agency's and the public's interest that aggrieved persons pursue the judicial review remedy set forth in sec. 59.99, our permitting Trager to assert his defenses does not significantly affect the operation of sec. 59.99. It appears that Trager has a good defense and that if he were precluded from asserting his defenses, he would suffer harsh consequences. We therefore conclude that in this case the interests underlying the exhaustion doctrine are outweighed by the burden imposed on Trager in denying him the opportunity to defend the enforcement action by challenging the validity of the Board's decision.[6]

[6] In *League of Women Voters v. Outagamie County*, 113 Wis. 2d 313, 321–22, 334 N.W.2d 887 (1983), in which parties contesting the issuance of conditional use permits brought a declaratory judgment action rather than appealing to a board and then bringing an action for statutory certiorari to the circuit court, this court discussed the exhaustion rule or exclusivity of remedies argument, as follows:

"Here, the trial court essentially converted the declaratory judgment action into a review by certiorari and treated it as

## III.

We turn now to the merits of Trager's defense.

The county brought this enforcement action relying on three provisions of the ordinance. The county maintains that Trager violated sec. 7.13(3)(a) of the ordinance by failing to obtain a building permit;[7] that Trager violated secs. 7.17(3)(b)[8] and 7.17(8)[9] of the ordinance

---

such. . . . The trial judge had to decide whether ch. 68, Stats., applied, and, if so, whether the county, and its related defendants, had complied with the requirement of that chapter. These would be the precise issues which would be raised on a proceeding formally denominated as certiorari. Because the trial judge took these actions [facing certain issues], it would be exalting form over substance to say that plaintiffs were required to commence a new action formally denominated as 'by certiorari.' The plaintiff's complaint was not barred by failure to appeal to the Board of Adjustment or failure to seek judicial review by certiorari."

[7] Sec. 7.13(3)(a) of the Sauk county zoning ordinance provides:

"(a) No building, sign or other structure or any part thereof shall hereafter be built, enlarged, altered, or moved within the area subject to the provisions of this ordinance until a building permit has been applied for in writing and obtained from the building inspector. Such permits shall be posted in a prominent place on the premises prior to and during the period of construction, alteration or moving. Forms for application for building permits shall be supplied by the building inspector and a record of all permits issued shall be kept in the office of the building inspector."

[8] Sec. 7.17(3)(b) of the Sauk county zoning ordinance, governs the highway setback lines for Pit Road as follows:

"(b) For all Class C highways setback lines are hereby established, parallel to and a distance of 63 feet from the center line of such highway or 30 feet from the right-of-way line, whichever is greater."

[9] Sec. 7.17(8) of the Sauk county zoning ordinance provides:

"(8) Structures prohibited within setback lines. No new building, new sign or other new structure or part thereof shall be placed between the setback lines established by this ordinance and the highway except as otherwise provided by this ordinance. . . ."

by locating the foundation for the garage within the setback area; and that Trager violated sec. 7.17(8)[10] of the ordinance by altering the existing structure in a manner that will increase or prolong the permanency of the foundation which violates the setback requirement. We will examine each alleged violation in turn.

Trager failed to obtain a building permit before constructing the wooden superstructure on the concrete foundation. Sec. 7.13(3)(a) of the ordinance, on which the county relies, provides that a building permit is required for such a structure. The ordinance does, however, provide for an exception to the permit requirement. Sec. 7.13(3)(d)(2) provides that "no building permit shall be required . . . for any building on which work to the amount of $500 or more has been done prior to the approval of this ordinance." The Board concluded that Trager did not fall within this exception. It concluded that work to the amount of less than $500 had been done on the foundation because "one should not consider money spent for tools and materials which have been used elsewhere."

The parties stipulated in this action that more than $500 had been spent for labor and supplies before the ordinance was approved. The circuit court concluded, and we agree, that under sec. 7.13(3)(d)(2) " 'work

---

[10] Sec. 7.17(8) of the Sauk county zoning ordinance further provides:

". . . [N]o building, sign or structure or part thereof existing within such setback lines on the effective date of this ordinance shall be altered or enlarged in any way that increases or prolongs the permanency thereof, or be reconstructed in its original existing location after having been destroyed by fire, storm or other catastrophe to the extent of 60 percent or more of its current market value as determined by the local assessor, unless such alteration, enlargement or reconstruction shall have been ordered by the board of adjustment, after public hearing and a view of the premises."

done' includes not only materials purchased for the project but also labor." When interpreted in this way, the exception set forth in sec. 7.13(3)(d)(2) exempts Trager from the building permit requirement.

The county next contends that Trager's foundation violates the ordinance setback requirements. Sec. 7.17 designates a series of highway setback lines within which no structures can be erected based on the type of highway abutting the property. Sec. 7.17(3)(b) provides that all structures be set back 63 feet from the centerline of town roads. Trager's garage foundation is located 33 feet from the centerline of a town road and thus violates the present setback requirement.

Trager contends, and we agree, that since no setback line was established in 1960 when he began constructing the foundations for the garage, the ordinance setback requirement does not apply to his garage. It is clear that the ordinance does not require that a structure constructed before the effective date of the ordinance and located within the setback lines be moved. Instead of requiring removal, sec. 7.17(8) limits the remodeling or reconstruction of structures which do not conform to the setback requirement. Sec. 7.17(8) provides that "no building, sign or structure or part thereof existing within such setback lines on the effective date of this ordinance shall be altered or enlarged in any way that *increases or prolongs* the permanency thereof." The county asserts that the wooden superstructure Trager began constructing violates these limitations.

The parties stipulated in this action "that the wooden part of the garage will have a shorter life than the concrete foundations and walls of the garage and therefore the enlargement or alteration of the superstructure will not *prolong* the permanency of the building." The county maintains that although under the stipulation the parties

agreed that the superstructure does not *prolong* the permanency of the foundation, the parties did not stipulate and agree that the superstructure does not *increase* the permanency of the foundation. We find this argument unpersuasive. It would be a tortured construction of the ordinance and the stipulation for us to conclude that the superstructure prolongs but does not increase the permanency of the foundation. Considering the ordinance and the stipulation, we thus conclude that Trager has not violated sec. 7.17 (8).

The county board's final argument is that since Trager's garage is located within the setback line, the provisions in the ordinance relating to a nonconforming use govern this case. The county contends that Trager discontinued the nonconforming use by failing to work on or occupy the garage for a period of 12 months and that any further use of the foundation must comply with the setback requirement of the zoning ordinance.

The parties disagree as to whether a structure that does not conform to setback requirements is a nonconforming use as the latter term is used in the Sauk county ordinance. The ambiguity of the term "nonconforming use" is not unique to the Sauk county ordinance but is a problem that has been discussed by numerous commentators and courts. Some commentators have attempted to distinguish between a nonconforming use and a nonconforming (noncomplying) structure as follows:

"Any use which is prohibited on a given piece of land at the time of the inquiry is a nonconforming use; any structure which does not conform to the regulations governing the bulk, *location*, height or size of structures permitted in the district at the time of inquiry is a nonconforming or noncomplying structure." 4 Rathkopf, *The Law of Zoning and Planning*, sec. 51.01 at 51-2 (4th ed. 1984). See also Williams, *Land Planning Law*, ch. 117 at 563-66 (1975); Anderson, *American*

*Law of Zoning,* sec. 6.01 at 355 (2d ed. 1976) ; Cutler, *Zoning Law and Practice in Wisconsin,* model zoning ordinance, sec. 8.0, appendix A (1967).

Some Wisconsin zoning ordinances have also recognized and addressed this problem. See, *e.g.,* the ordinance discussed in *State ex rel. Holmes v. Burt,* 23 Wis. 2d 231, 235, 127 N.W.2d 270 (1964).

When an ordinance is ambiguous, an ordinance, like a statute, must be interpreted to give effect to the legislative intent. *Columbia County v. Bylewski,* 94 Wis. 2d 153, 168, 288 N.W.2d 129 (1980) ; *Milwaukee County v. DILHR,* 80 Wis. 2d 445, 259 N.W.2d 118 (1977) ; *State ex rel. Knudsen v. Board of Education,* 43 Wis. 2d 58, 168 N.W.2d 295 (1969).

We look first at the language of the ordinance. Sec. 7.20, the definition section of the ordinance, defines nonconforming use as follows: "A building or premises occupied by a use that does not conform with the regulation of the district in which it is situated."

Sec. 7.12(1)(f) regulates the continued use of premises the use of which does not conform to the ordinance and the effect of discontinuing the nonconforming use of the premises. Sec. 7.12(1)(f) provides, *inter alia:*

"1. The existing lawful use of a building or premises at the time of the enactment of this ordinance or any amendment thereto may be continued although such use does not conform with the provisions of this ordinance for the district in which it is located, but no building or premises containing a nonconforming use shall be enlarged or extended.

"3. If the nonconforming use of a building or premises is discontinued for a period of 12 months, any future use of the building or premises shall conform to the regulations for the district in which it is located."

Since the definition of nonconforming use relates the nonconforming use to the district regulations, our ini-

tial reading of these provisions leads us to believe that the Sauk county zoning ordinance uses the term "nonconforming use" to refer only to the functional use of premises, not the location of the structure on the premises. This interpretation of the term nonconforming use is supported by reading secs. 7.20 and 7.12(1)(f) in the context of the entire zoning ordinance.

The ordinance first divides the county into 10 use districts and then sets forth limits on the types of structures that may be erected in each district and the general purposes to which the premises may be put in each district. The ordinance then contains a series of requirements and exceptions, including the nonconforming use provision in sec. 7.12(1)(f), that apply to structures in all 10 districts. Other provisions of the zoning ordinance list additional requirements applicable to all buildings, whether occupied by conforming or nonconforming uses, including setback and building permit requirements. These additional requirements contain specific exemptions and limitations on their applicability. As we have already explained, Trager's foundation and superstructure construction fall within the scope of an exception or limitation for each requirement he is alleged to have violated.

The county's interpretation of the ordinance requires the conclusion that even though Trager's garage is exempt from the setback requirements in sec. 7.17(3) and (8), it is a nonconforming use because it violates these very same requirements. This is at best a strained interpretation of the ordinance. We believe a better interpretation of the ordinance is that the nonconforming use sections refer only to premises used in a manner not permitted in the zoning district in which the property is located and do not refer to structures which do not comply with setback requirements. This interpretation fits together all the provisions of the zoning ordinance and is consistent with the definition of noncon-

forming use which relates the use to the district regulations.

We read the zoning ordinance to mean that a nonconforming use refers to premises used for a purpose not permitted in the district in which the premises are situated; nonconforming use does not include a nonconforming (noncomplying) structure which is used for a purpose permitted in the district. Since a personal garage (in contrast to a commercial garage) is a permitted use in the agricultural district in which Trager's property is situated, Trager's foundation is not a nonconforming use under the ordinance. Since the foundation is not a nonconforming use, the 12-month discontinuation rule does not apply.

For the reasons set forth, we conclude that Trager is not precluded from asserting his defenses in this enforcement action and we further conclude that the Board erred in its interpretation of the ordinance. We therefore affirm the decision of the court of appeals.

*By the Court.*—Decision of the court of appeals affirmed.