TOWN OF MENASHA, Plaintiff-Appellant,

v.

B & B RACE CAR ENGINEERING, and Bruce Mueller,
Defendants-Respondents.

Court of Appeals

*No. 92–0784. Submitted on briefs October 14, 1992.—Decided
November 18, 1992.*

(Also reported in 493 N.W.2d 250.)

On behalf of the plaintiff-appellant, the cause was submitted on the brief of *Robert B. Loomis* of *Herrling, Clark, Hartzheim & Siddall, Ltd.* of Appleton.

On behalf of the *pro se* defendants-respondents, the cause was submitted on the "post-trial" brief of *Robert J. Craanen* of *Torgerson Law Offices, S.C.* of Neenah.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

NETTESHEIM, P.J.  The town of Menasha appeals from a judgment and an order dismissing its complaint seeking a judgment for past personal property taxes allegedly owed by B & B Race Car Engineering. The issue on appeal is whether the trial court properly permitted B & B to raise a defense that its property was exempt from the tax even though B & B had not followed the statutory procedures for objecting to the tax assessment or obtaining the exemption. We uphold the court's ruling.

The relevant facts are not disputed. The taxable years in question are 1983 through 1987. For 1983 and

1984, B & B prepared and filed a Statement of Personal Property pursuant to sec. 70.35(1), Stats. The information in this statement permits the assessor "[t]o determine the amount and value of any personal property for which any person, firm or corporation should be assessed." *Id.* Although B & B filed the statement for these two years, the evidence established that its owner, Bruce Mueller, advised the assessor that B & B objected to the tax because the property qualified for the manufacturing exemption.[1]

In the introductory portion of the statement, B & B identified its business as "Race Car Chassis Manufacturing & Parts." At Schedule D of this statement, the taxpayer is supposed to list that property which does *not* qualify for the manufacturing exemption. However, when B & B filled out the statement, it listed at Schedule D the personal property which it claims qualifies for the exemption. Explaining this apparent inconsistency, Mueller testified that he filed the form and listed the property because he was told to do so by the assessor. The statement does not otherwise provide a schedule where the taxpayer may list property which qualifies for the exemption.

For 1983 and 1984, the years during which B & B filed the statements, the town submitted corresponding personal property tax bills to B & B. For the ensuing years during which B & B did not file the statement, the town submitted personal property tax bills based upon the prior statements.

B & B never paid the taxes. Nor did B & B ever contest the validity of the tax or the valuation of the property before the Board of Review pursuant to sec.

---

[1] Mueller testified that this conversation occurred in 1983. The assessor's testimony, although acknowledging this conversation, did not state when it occurred.

70.47, Stats. In addition, B & B never invoked the statutory procedures of sec. 70.995, Stats., for obtaining a manufacturing exemption of its personal property from the Department of Revenue.[2]

At the close of the evidence, the trial court ruled that B & B's business activity qualified under the manufacturing exemption pursuant to sec. 70.11(27), Stats. The town does not challenge this ruling on appeal. Later, after the parties submitted briefs, the court also ruled that B & B was entitled to assert its "exemption" defense despite its failure to pursue available statutory procedures to contest the tax and to obtain the Department of Revenue's approval of the claimed exemption. The town appeals.

## JURISDICTION

We first address the town's argument that the trial court was without subject matter jurisdiction to address B & B's exemption defense.[3]

Here, the town—not B & B—invoked the subject matter jurisdiction of the circuit court to hear its action to collect the tax. Thus, we question on a threshold basis whether the town's argument against B & B's exemption defense can be jurisdictionally premised. Although other arguments can be made as to why B & B should not be permitted to assert its defense (matters we will address later), we do not see this as a jurisdictional issue.

---

[2] According to the evidence, B & B did obtain a manufacturing exemption from the department in 1988. B & B makes no claim that this administrative action should be applied retroactively.

[3] The town does not expressly identify its jurisdictional argument as one pertaining to *subject matter* jurisdiction. We construe it as such.

Even if we were to address this matter on jurisdictional grounds, we conclude that the circuit court had jurisdiction to address B & B's defense. In *G. Heileman Brewing Co. v. City of La Crosse*, 105 Wis. 2d 152, 312 N.W.2d 875 (Ct. App. 1981), the taxpayer sued for a refund of property taxes claiming that the manufacturing exemption precluded the tax. In response, the city of La Crosse argued that sole jurisdiction over the dispute was with the Tax Appeals Commission—not the circuit court. The court of appeals held that where the question was the *validity* of the tax—not the valuation of the property or the amount of the tax the circuit court had jurisdiction to entertain the action. *Id.* at 157-59, 312 N.W.2d at 877-79. Here, the question raised by B & B's defense is whether the tax which the town seeks to collect is *valid. Heileman* holds that the circuit court has jurisdiction to decide such a question.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

We next examine whether B & B's admitted failure to exhaust its administrative remedies precludes its exemption defense in this case.[4]

The Wisconsin Supreme Court spoke to this doctrine in detail in *County of Sauk v. Trager*, 118 Wis. 2d 204, 346 N.W.2d 756 (1984). There, Sauk county brought a forfeiture action against a property owner for the alleged violation of a setback requirement in the county zoning ordinance. The property owner denied the violation. However, he had previously failed to pursue

---

[4] The town's brief does not expressly invoke the doctrine of exhaustion of administrative remedies. However, the substance of the town's argument travels to the considerations which underpin this doctrine. Moreover, the trial court spoke to this doctrine when making its ruling.

his administrative remedies when the Board of Adjustment ruled against him on the same question.

The supreme court first spoke to the importance and utility of the doctrine of exhaustion of administrative remedies:

> The purpose of the exhaustion doctrine . . . is to allow the administrative agency to perform the functions delegated to it by the legislature without interference by the courts. The doctrine allows the agency to apply its special competence and expertise and to make a factual record.
>
> . . ..
>
> The purpose of the exhaustion rule . . . [is] to achieve finality of administrative agency decision-making, to maintain orderly judicial process, to prevent a multiplicity of suits, and to achieve economy of judicial time.

*Id.* at 210-11, 346 N.W.2d at 759-60 (citations omitted). However, the court also cautioned that the exhaustion of administrative remedies doctrine "is a rule of policy, convenience, and discretion, *not a rule regulating the jurisdiction of the court.*" *Id.* at 211-12, 346 N.W.2d at 760 (emphasis added).

The supreme court in *Trager* took particular note that "Trager is the reluctant defendant in a court action initiated by the administrative agency." *Id.* at 212, 346 N.W.2d at 760. In such a setting, the court held that the first inquiry was whether the legislature intended to preclude a property owner from defending in an enforcement action. *Id.* Relying on prior case law, the court held that the legislature did intend the statutory mechanism for judicial review as the exclusive method for challenging the administrative decision in court. *Id.* at 213-14, 346 N.W.2d at 760-61. Here, we will assume *arguendo* that the legislature also intended the statutory proce-

dures available to B & B as the exclusive means for challenging the town's taxing action.

However, the *Trager* court went on to say that the inquiry did not stop with this conclusion. Instead, the court further observed: There may be exceptional cases in which the court will not bar a defense by the application of the exhaustion doctrine. *Id.* at 214, 346 N.W.2d at 761. In deciding whether a particular case qualifies as the "exceptional" case, the trial court, in the proper exercise of discretion, "should balance the litigant's need for judicial review, the agency's interest in precluding the litigant from defending the action, and the public's interest in the sound administration of justice." *Id.*

Applying these criteria, the supreme court first noted that the trial court forum was as capable as the administrative agency to develop a factual record and to pass on the validity of the administrative action. *Id.* at 215, 346 N.W.2d at 761. The court also noted that the standard of review for purposes of appellate review of the trial court action was the same as judicial review of the administrative action. *Id.*

Second, the supreme court noted that the essential facts were undisputed and the question presented was one of law—the validity of the administrative action. *Id.* And, although the administrative agency's legal conclusion might be entitled to some deference, the supreme court noted that such is not binding on the reviewing court. *Id.* at 215-16, 346 N.W.2d at 761-62.

Third, the supreme court looked to the possible merits of the proffered defense. *Id.* at 216, 346 N.W.2d at 762. "A court is reluctant to apply the exhaustion rule and preclude a person from raising what appears to be a sound defense unless the policies favoring preclusion outweigh considerations of equity." *Id.*

Finally, the supreme court looked to the harshness of the result if the defense is precluded. "Trager would be stripped of his only defense and he might suffer a harsh result he might forfeit as much as $5,000 and be required to move or destroy the foundation." *Id.*

Based on these considerations, the *Trager* court concluded that the property owner's failure to exhaust his administrative remedies did not preclude him from defending on the merits in the forfeiture action. *Id.* at 217, 346 N.W.2d at 762.

The facts here require the same conclusion. B & B is a reluctant defendant in an action commenced by the taxing entity. The trial court forum here was as capable as the administrative forum to develop a factual record and to pass on the validity of the tax imposed by the town. The question is one of law and the controlling facts are not in dispute. B & B's exemption defense has arguable merit. Finally, were the defense precluded, B & B would lose its only defense to the action and suffer a forfeiture of approximately $5000.

We conclude that the doctrine of exhaustion of administrative remedies did not preclude B & B's defense and that the trial court did not abuse its discretion in declining to apply the exhaustion doctrine against B & B.

## PUBLIC POLICY

Last, we address the public policy argument asserted by the town. Here, we return to the *Heileman Brewing* case which we earlier addressed.[5] In *Heileman*, the tax-

---

[5] The town does not expressly invoke the phrase "public policy." However, the *G. Heileman Brewing Co. v. City of La Crosse*, 105 Wis. 2d 152, 312 N.W.2d 875 (Ct. App. 1981), to which the town cites, addressed this issue in those terms.

payer had paid the taxes without protest and without any other signal to the taxing entity that the taxes were disputed. Later, the taxpayer learned that the assessment might be invalid. Thus, the taxpayer commenced its action for a refund of the tax. Holding that the taxpayer could not belatedly assert its claim that the tax was invalid, the court of appeals stated:

> The requirement of resistance to or involuntary payment of a tax is one of public policy: government has an interest in allocating its resources. It is desirable that government know when it contemplates spending public funds that those funds are either available or subject to loss through tax refund. The requirement that one who seeks repayment of illegally assessed taxes notify the governmental unit that he wants them returned is not onerous. The inequity of paying illegally collected taxes is outweighed by the requirement that government know what amount of income it has available.

*Heileman*, 105 Wis. 2d at 161-62, 312 N.W.2d at 880.

The factual premise for the above statement in *Heileman* is not present here. B & B has *never* paid the disputed taxes and, in fact, B & B advised the assessor that it disputed the assessment and the resulting taxes. The public policy statement of *Heileman* applies where the taxpayer *voluntarily* pays the taxes without any notice or signal to the taxing entity that it might face the loss of the tax revenues at some future time. Such is not the case here.

*By the Court.*—Judgment and order affirmed.