LAMAR CENTRAL OUTDOOR, LLC d/b/a Lamar
Advertising of Central Wisconsin,
Petitioner-Appellant,†

v.

WISCONSIN DEPARTMENT OF TRANSPORTATION,
Respondent-Respondent.

Court of Appeals

*No. 2008AP439. Submitted on briefs September 8, 2008.
—Decided November 20, 2008.*

2008 WI App 187

(Also reported in 762 N.W.2d 745.)

† Petition to review denied 2/10/09.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Thomas S. Hornig* and *Kraig A. Byron* of *Brennan, Steil & Bastings, S.C.*, Madison.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Kathleen M. Batha*, asst. attorney general, and *J.B. Van Hollen*, attorney general.

Before Higginbotham, P.J., Vergeront and Bridge, JJ.

¶ 1. VERGERONT, J. Lamar Central Outdoor, LLC, seeks compensation for an outdoor advertising sign that was removed by the Wisconsin Department of Transportation (DOT) after DOT issued a removal order asserting the sign was unlawful. The primary issue on appeal is whether the administrative and judicial review provided in WIS. STAT. § 84.30(18) (2005–06)[1] is the exclusive procedure for determining the legality of the sign after a removal order has issued, even if DOT has already removed the sign. The circuit court concluded this was the exclusive procedure and dismissed this action because Lamar had not exhausted this procedure. We agree with the circuit court. We conclude the administrative and judicial review provided in § 84.30(18) is the exclusive procedure for challenging the legality of Lamar's sign after issuance of the removal order, even though DOT removed the sign. We also conclude that a determination under § 84.30(18) that Lamar's sign is legal is a necessary predicate to just compensation for the sign under the statutory scheme. Because Lamar did not exhaust the administrative and judicial review procedure in § 84.30(18) before bringing this action for just compensation and because we conclude no exception from the exhaustion doctrine is warranted, we affirm.

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

## BACKGROUND[2]

¶ 2. The sign at issue, owned by Lamar, was located on the side of interstate Highway 39 as of March 18, 1972, the effective date of WIS. STAT. § 84.30 ("Regulation of outdoor advertising"). *See* 1971 Wis. Laws ch. 197. By letter dated February 13, 2006, DOT notified Lamar that the sign was a nonconforming sign under § 84.30, it had been rebuilt illegally, and it was therefore noncompliant with WIS. ADMIN. CODE § TRANS 201.10 (Feb. 2005).[3] The letter stated that it constituted a sixty-day removal notice, with the sixty days beginning on the date of the letter. The letter also informed Lamar that within sixty days of the letter it could request a formal hearing conducted by the Division of Hearings and Appeals (DHA) under WIS. STAT. ch. 227.

¶ 3. On April 6, 2006, Lamar requested that DHA schedule a hearing on DOT's removal order, asserting that the order was based on incorrect facts and an incorrect interpretation of the law. DHA scheduled a hearing for July 31, 2006, to address the issues "set forth in the Department of Transportation's removal order . . . [s]pecifically, whether the subject sign lost its legal, nonconforming status either [sic] because it was substantially changed in violation of WIS. ADMIN. CODE § TRANS 201.10(2)(e)."

---

[2] The facts in paragraphs 2–6 are taken from the submissions of DOT and have not been disputed by Lamar, either by opposing submissions or in argument. However, as we discuss in paragraphs 13–15, Lamar contends that DOT's submissions were not properly before the court. Because we conclude that DOT's submissions establishing the facts in paragraphs 2–6 were properly before the court, *see infra* paragraph 15, we rely on them to set forth the background facts.

[3] All references to the Wisconsin Administrative Code are to the February 2005 version unless otherwise noted.

¶ 4. On May 18, 2006, DOT removed the sign in connection with a highway improvement project.[4] Lamar filed a motion to dismiss its case before DHA, contending that, with the removal of the sign, the issue to be decided at the hearing was moot. According to Lamar, the issue had become whether Lamar was "entitled to compensation for the removal of its sign because of a highway improvement project pursuant to either Section 84.30 or Chapter 32" and "[t]hose issues [were] more properly, if not exclusively, handled by the Circuit Court."

¶ 5. DOT objected to dismissal on the ground that the issue of the lawfulness of its removal order was not moot because, if DOT was correct that the sign was illegal, Lamar would not be entitled to compensation for the sign. DOT contended that the hearing before DHA was the only means to challenge DOT's finding that the sign was illegal and, if DHA did dismiss the matter pursuant to Lamar's request, the unchallenged removal order would preclude Lamar from litigating the issue of the legality of the sign in a subsequent action.

¶ 6. The DHA hearing examiner entered an order dismissing the matter pursuant to Lamar's withdrawal of its request for a hearing.[5] In a letter accompanying

_____

[4] Lamar appears to believe that DOT is disputing this fact, but we do not see this argument in DOT's brief and the record shows this fact is not disputed. Lamar alleges in its petition that the sign was removed for the purpose of facilitating a highway improvement project and DOT admits this in its answer. In addition, submissions of both DOT and Lamar establish this fact. Therefore we treat this as an undisputed fact for purposes of this appeal.

[5] The hearing examiner explained in the letter accompanying the order that he viewed Lamar's "motion to dismiss" as a simple withdrawal of its request for a hearing.

the order, the examiner explained that, while in his view DHA still had the authority to decide the issue of the legality of the sign, he had no basis for preventing Lamar from voluntarily withdrawing its request for a hearing on that issue. Because the examiner found it unnecessary to do so, he did not resolve the parties' dispute over whether DHA had the exclusive authority to decide the issue of the sign's legality. The examiner stated that he was not aware of a reason the sign's legality could not be decided by a circuit court as part of an action seeking compensation for the sign's removal. However, the examiner also cautioned that, if DOT was correct that DHA must decide the issue of legality, "then Lamar by withdrawing its request for a hearing to review the [DOT]'s removal order has assumed the risk that it may be precluded from seeking compensation for the sign."

¶ 7. Several months later, Lamar filed this action seeking compensation for the sign under either Wis. Stat. § 84.30 or Wis. Stat. § 32.10 ("Condemnation proceedings instituted by property owner"). In its petition Lamar alleged that DOT had failed to follow statutory condemnation procedures with respect to removal of the sign. The petition did not refer to the removal order or Lamar's request for a hearing before DHA, stating only that "DOT threatened to remove said sign structure and faces promptly after April 13, 2006 and then removed said sign structure on or about May 23, 2006."

¶ 8. DOT filed a motion to dismiss, asserting that Wis. Stat. § 84.30(18) provided the exclusive procedure for challenging an order for removal of an uncompensated sign and that Lamar had failed to exhaust these administrative and judicial remedies.[6] The motion also

[6] DOT formulates its argument on the exclusivity of the administrative and judicial review procedures in terms of the

asserted that the petition failed to state a claim for relief because Lamar was not entitled to compensation

court's "competency" to hear this action. DOT is correct not to use the term "jurisdiction" in this context. Although in older cases the exclusivity of administrative remedies is frequently couched in terms of "exclusive jurisdiction" of the administrative agency, more recent cases have recognized that, because courts have plenary subject-matter jurisdiction under our state constitution, "[n]o circuit court is without subject-matter jurisdiction to entertain actions of any nature whatsoever." *Madison Teachers, Inc. v. Madison Metro. Sch. Dist.*, 197 Wis. 2d 731, 758, 541 N.W.2d 786 (Ct. App. 1995) (citing *Mueller v. Brunn*, 105 Wis. 2d 171, 176, 313 N.W.2d 790 (1982), *abrogated on other grounds by Village of Trempealeau v. Mikrut*, 2004 WI 79, 273 Wis. 2d 76, 681 N.W.2d 190).

However, we question whether the court's competency is implicated when the issue is whether a statutory remedy for review of an administrative action is exclusive. The term "competency" is used to denote a "lesser power" than subject-matter jurisdiction, *Trempeleau*, 273 Wis. 2d 76, ¶ 14, and a court may lose its competency to proceed in a particular case, but not its subject-matter jurisdiction, if there is noncompliance with statutory mandates that are "central to the statutory scheme." *Id.*, ¶¶ 9–10 (citations omitted). "Loss of competency" cases typically involve noncompliance with statutory time limits or other requirements imposed on the court or state agencies. *See id.*, ¶¶ 12–13. As we discuss in more detail later in this opinion, even though a court determines that the legislature intended that a statutory procedure for administrative and judicial review be exclusive, a court has the authority to conclude in a particular case that exhaustion of that statutory procedure is not required. *County of Sauk v. Trager*, 118 Wis. 2d 204, 213–14, 346 N.W.2d 756 (1984). *See infra* paragraphs 19, 34–36. It therefore appears that the court's competency to adjudicate Lamar's request for just compensation is not at issue, but, rather, the correctness of the circuit court's conclusion that the statutory procedure is intended to be exclusive and Lamar must exhaust it. For this reason we do not use the term "competency." However, if the court's competency were the

on two alternative grounds: the sign was illegal because of noncompliance with WIS. ADMIN. CODE § TRANS 201.10(2)(e) and no compensation is due for a sign removed pursuant to the police powers of the state. DOT accompanied its motion with affidavits that related both to the proceedings on the removal order and to the merits of its contention that the sign was illegal.

¶ 9. Lamar opposed the motion and filed affidavits in opposition, but none related to the proceedings on the removal order. Lamar contended in its brief that the circuit court could not rely on anything outside the petition because DOT's motion was not one for summary judgment. In the event the court elected to treat the motion as one for summary judgment, Lamar stated, it "reserve[d] the right" to present additional factual materials.

¶ 10. The circuit court granted DOT's motion. The court concluded that the administrative and judicial review established in WIS. STAT. § 84.30(18) is the exclusive procedure for reviewing the validity of DOT's removal order, including determination of the sign's legality. The court also concluded that Lamar was required to exhaust that procedure and had not done so. In arriving at these conclusions, the court relied on DOT's submissions describing the DHA proceedings on the removal order. The court did not address the merits of the dispute on the sign's legality.

## DISCUSSION

¶ 11. Lamar argues on appeal that the court erred in dismissing its petition because the administrative and judicial review specified in WIS. STAT. § 84.30(18) for

correct analytical framework, our conclusion and the substance of our analysis would be the same.

challenging sign removal orders is not applicable once the sign is removed by DOT. Lamar concedes that it is the exclusive procedure by which a sign owner may challenge a notice to remove an allegedly illegal sign before the sign is removed. However, according to Lamar, once DOT removes the sign, the only issue to be decided is just compensation for the removed sign, and this is an issue that only the circuit court may determine.

¶ 12. DOT responds that the circuit court correctly determined that Wis. Stat. § 84.30(18) provides the exclusive means of challenging the removal order even after DOT removes the sign. According to DOT, because the issue of the legality of the sign is determined in the hearing before DHA and is necessarily an issue in a suit seeking just compensation, Lamar must exhaust the administrative and judicial review procedure established in § 84.30(18) before bringing a suit for compensation in circuit court.

¶ 13. As a threshold matter we address Lamar's position that, in resolving these issues, we may rely only on the petition and not on the submissions DOT filed with its motion. Lamar appears to agree with DOT that, although the motion was called a motion to dismiss, under Wis. Stat. § 802.06(2)(b) the circuit court could have considered matters outside the petition and treated the motion as one for summary judgment.[7] However, Lamar points out that, when it asked

---

[7] Wisconsin Stat. § 802.06(2)(b) provides:

If on a motion asserting the defense . . . to dismiss for failure . . . to state a claim upon which relief can be granted . . . matters outside of the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in s.802.08, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by s.802.08.

the court at the end of the motion hearing whether the court was treating the motion as one for dismissal or one for summary judgment, the court stated it was treating it as a motion to dismiss. Lamar asserts that it was not given "an additional opportunity to present any factual evidence relating to the subject sign."

■

¶ 14. We are not persuaded by Lamar's argument. The petition mentions nothing about the removal order and proceedings before DHA. The only way for DOT to raise the issues on exclusivity and exhaustion is by a motion that presents to the court factual materials showing the DHA proceedings related to the removal order. Lamar had the opportunity to present opposing submissions on those issues but did not do so. Lamar did not argue in the circuit court, and does not argue on appeal, that there is any dispute in the facts relevant to resolving the exclusivity and exhaustion issues. In its brief in the circuit court Lamar identified the structure of the sign as an issue on which there were disputed issues of fact. In that context, Lamar asked the court for the opportunity to present additional submissions if the court treated the motion as one for summary judgment. However, because the court dismissed based on exclusivity and exhaustion grounds, it did not rule on the issue of the sign's legality.

¶ 15. It is clear from the circuit court's oral opinion that, in arriving at its conclusions, it considered DOT's submissions on the proceedings before DHA. It is also clear that, when the court stated it was not treating the motion as one for summary judgment, it did not mean that it was not considering submissions outside the petition on the exclusivity and exhaustion issues. We are satisfied that Lamar understood the court was relying on those submissions as the factual basis for its

ruling on exclusivity and exhaustion. We are also satisfied that Lamar had the opportunity to present factual materials in opposition. Therefore, we conclude the court properly considered DOT's submissions relating to the exhaustion and exclusivity issues.

¶ 16. It is immaterial to our review that the circuit court viewed its ruling as one on a motion to dismiss rather than one for summary judgment. Our review of the grant or denial of summary judgment is de novo. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314–16, 401 N.W.2d 816 (1987). A party is entitled to summary judgment if there are no genuine issues of material fact and that party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2).[8]

¶ 17. We conclude, as the circuit court implicitly did, that the facts material to the resolution of the exclusivity and exhaustion issues are undisputed. We therefore turn to the question whether DOT is entitled to judgment as a matter of law based on either of those doctrines.

¶ 18. Generally, "where a statute sets forth a procedure for review of administrative action and court

---

[8] When construction of a statute is involved in determining whether a statutory procedure provides the exclusive remedy and there are no facts in dispute, we are presented with a question of law for our de novo review. *See Vivid, Inc. v. Fiedler*, 219 Wis. 2d 764, 774–75, 580 N.W.2d 644 (1998). This is consistent with our de novo review of summary judgment. With respect to the exhaustion doctrine, we have noted that the case law on the standard of review is not clear but most cases appear to employ a de novo analysis. *Metz v. Veterinary Examining Bd.*, 2007 WI App 220, ¶¶ 16–18, 305 Wis. 2d 788, 741 N.W.2d 244. We employ a de novo analysis here, which is consistent with the

review of the administrative decision, such remedy is exclusive and must be employed before other remedies are used." *Nodell Inv. Corp. v. City of Glendale,* 78 Wis. 2d 416, 422, 254 N.W.2d 310 (1977). The related principle of exhaustion of administrative remedies is applied both to require that a party complete all administrative proceedings before coming into court as well as to require that a statutorily prescribed procedure for judicial review of an agency decision is utilized before seeking other relief from the courts. *County of Sauk v. Trager,* 118 Wis. 2d 204, 210–11, 346 N.W.2d 756 (1984).

¶ 19. Both the doctrine of exclusive remedy and the doctrine of exhaustion recognize situations in which the doctrines should not be applied. Statutorily prescribed procedures are not considered exclusive if the remedy is not adequate. *See State ex rel. First Nat'l Bank v. M&I Peoples Bank,* 82 Wis. 2d 529, 542, 263 N.W.2d 196 (1978). Even if a statutory review procedure is intended by the legislature to be exclusive and is adequate, exhaustion is not required in "exceptional cases" if there are good reasons not to apply it. *Trager,* 118 Wis. 2d at 214.[9]

---

standard of review on summary judgment and appears to be what most reviewing courts have done. *See id.*

[9] The case law does not always make a clear distinction between the doctrine of exclusive remedy and the exhaustion doctrine. *See, e.g., State ex rel. First Nat'l Bank v. M&I Peoples Bank,* 82 Wis. 2d 529, 544–46, 263 N.W.2d 196 (1978) (drawing on cases decided under the exhaustion doctrine in deciding that Wis. Stat. ch. 227 provided the exclusive means of judicial review in that situation). This is no doubt because there is a considerable overlap in the doctrines—both in the policies informing the doctrines and in the exceptions to the doctrines. *Cf. id.* at 542–43 (discussing the policies underlying the exclusivity doctrine) and *Trager,* 118 Wis. 2d at 210–14 (discussing

¶ 20. An examination of the statutory scheme is the starting point for deciding whether either the exclusivity doctrine or the exhaustion doctrine applies. WISCONSIN STAT. § 84.30 governs the regulation of outdoor advertising, including the removal of signs and the compensation for removed signs. In general, signs along state highways are prohibited, but there are certain exceptions, § 84.30(3), and there are requirements that permissible signs must meet. Section 84.30(4). Section 84.30(5) recognizes categories of nonconforming signs that may continue to exist for certain periods of time or upon certain conditions.

¶ 21. Under WIS. STAT. § 84.30(6), DOT must pay just compensation for certain categories of signs that it removes or relocates that are not in conformity with the statute, including signs lawfully in existence on March 18, 1972, and signs lawfully erected on or after that date.[10] Subsection (7) specifies the measure of just compensation and, if the owner and DOT are not able to

---

the policies underlying the exhaustion doctrine in various factual settings).

[10] WISCONSIN STAT. § 84.30(6) provides:

(6) Just compensation. The department shall pay just compensation upon the removal or relocation on or after March 18, 1972, of any of the following signs which are not then in conformity with this section, regardless of whether the sign was removed because of this section:

(a) Signs lawfully in existence on March 18, 1972.

(b) Signs lawfully in existence on land adjoining any highway made an interstate or primary highway after March 18, 1972.

(c) Signs lawfully erected on or after March 18, 1972.

The court in *Vivid, Inc. v. Fiedler*, 219 Wis. 2d 764, 776–77 n.3, 580 N.W.2d 644 (1998), stated that a sign is "not then in conformity with this section" if it does not fit into one of the categories in § 84.30(3).

agree on the amount of compensation payable, either may initiate an action to have such compensation determined under Wis. Stat. § 32.05 ("Condemnation for sewers and transportation facilities"). Section 84.30(8).

¶ 22. There is no dispute in this case that Lamar's sign was lawfully in existence on March 18, 1972, but did not conform to the requirements of Wis. Stat. § 84.30(3), and therefore was a nonconforming sign. Such signs are lawful and are not subject to removal if the signs simply continue to exist with customary maintenance and changes in the advertising message. Section 84.30(5)(bm). However, "to enlarge, replace or relocate such signs, or to erect additional signs, shall constitute a violation subjecting the sign to removal without compensation, unless upon completion of such work all signs upon the property conform to the requirements of sub. (3)." *Id.*

¶ 23. Wisconsin Admin. Code § Trans 201.10(2), promulgated pursuant to Wis. Stat. § 84.30(14), specifies in more detail the changes to a sign that result in loss of its lawful nonconforming status. If any of the conditions of § Trans 201.10(2) are not met or are violated, the sign loses its lawful nonconforming status, is an illegal sign, and is subject to removal without compensation. Wis. Admin. Code §§ Trans 201.09 and 201.10(1); *see also* Wis. Admin. Code § Trans 201.02(5).[11]

---

[11] The definition of an illegal sign under Wis. Admin. Code § Trans 201.02(5) includes "a non-conforming sign that has lost its nonconforming status, or a grandfathered sign that has lost its grandfathered status."

Wisconsin Admin. Code § Trans 201.09 provides:

> **Removal of illegal signs.** Any sign erected after October 1, 1972, without a permit having been granted therefor, and any nonconforming sign which subsequently violates s. 84.30, Stats., or these rules, shall be subject to removal as an illegal sign. Upon removal of an illegal sign, the owner of the sign shall be given 30

¶ 24. DOT may remove "[a]ny sign erected . . .
after March 18, 1972, in violation of this section or the

days in which to salvage the sign upon payment of actual reasonable costs incurred in removing the sign. If not salvaged, the sign may be disposed of as the department deems appropriate.

WISCONSIN ADMIN. CODE § TRANS 201.10 provides:

**Removal of nonconforming signs. (1)** Nonconforming signs, as defined by s. 84.30(5), Stats., shall be eliminated in accordance with s. 84.30, Stats., and these rules. Compensation for removal of a nonconforming sign shall be paid in accordance with s. 84.30(6) to (8), Stats., provided the sign has complied with the conditions in sub. (2).

(2) In order to lawfully maintain and continue a nonconforming sign, or a grandfathered sign under s. 84.30(3)(d), Stats., the following conditions apply:

(a) The sign must have been actually in existence at the time the applicable state law became effective, except where a permit for the construction of a sign was granted by the state prior to the effective date of the state law and the sign owner acted in good faith and expended sums in reliance thereon. This exception shall not apply in instances where large numbers of permits were applied for and issued to a single sign owner, obviously in anticipation of the passage of a state control law.

(b) There must be existing property rights in the sign affected by the state law.

(c) The sign may be sold, leased, or otherwise transferred without affecting its status, but its location may not be changed. A nonconforming sign removed as a result of a right-of-way taking or for any other reason may be relocated to a conforming area but cannot be re-established at a new location as a nonconforming use.

(d) The sign must have been lawful on the effective date of the state law and must continue to be lawfully maintained.

(e) The sign must remain substantially the same as it was on the effective date of the state law, and may not be enlarged. Reasonable repair and maintenance of the sign, including a change of advertising message, is not a change which would terminate nonconforming rights. Customary maintenance ceases and a substantial change occurs if repairs or maintenance, excluding message changes, on a sign exceeds 50% of the replacement costs of the sign.

205

rules . . ." upon sixty days prior notice. Wɪs. Sᴛᴀᴛ. § 84.30(11).[12] A person receiving such a notice has a right to a hearing before DHA that conforms to the contested case provisions under Wɪs. Sᴛᴀᴛ. ch. 227 and to judicial review of that decision under ch. 227. Section 84.30(18). Wɪsᴄᴏɴsɪɴ Sᴛᴀᴛ. §§ 227.52 and 227.58 specify the procedure for and scope of judicial review that is applicable to final decisions of DHA under § 84.30(18).[13]

¶ 25. Lamar's primary argument is that the procedure established in Wɪs. Sᴛᴀᴛ. § 84.30(18) is not applicable after DOT has removed the sign. According to Lamar, the only issue in a hearing before DHA is whether DOT may remove the sign and, once DOT has

---

(f) The sign may continue as long as it is not destroyed, abandoned or discontinued . . . .

In this case, the specific condition that DOT contends Lamar's sign violated is Wɪs. Aᴅᴍɪɴ. Cᴏᴅᴇ § Tʀᴀɴs 201.10(2)(e).

[12] Wɪsᴄᴏɴsɪɴ Sᴛᴀᴛ. § 84.30(11) provides in relevant part:

(11) Department removal. Any sign erected in an adjacent area after March 18, 1972, in violation of this section or the rules promulgated under this section, may be removed by the department upon 60 days' prior notice by registered mail to the owner thereof and to the owner of the land on which said sign is located, unless such sign is brought into conformance within said 60 days . . . .

"Erect" is defined in Wɪs. Sᴛᴀᴛ. § 84.30(2)(e) as follows:

to construct, build, raise, assemble, place, affix, attach, create, paint, draw, or in any other way bring into being or establish; but it does not include any of the foregoing activities when performed as an incident to the change of advertising message or customary maintenance of the sign structures.

[13] *See also* Wɪs. Sᴛᴀᴛ. § 227.43(1)(bg), which provides that DHA shall assign a hearing examiner to preside over hearings under Wɪs. Sᴛᴀᴛ. § 84.30(18), and Wɪs. Sᴛᴀᴛ. § 227.46(2m), which provides that the hearing examiner shall prepare a proposed decision for the DHA administrator and the decision of the DHA administrator "is a final decision of the agency subject to judicial review under s. 227.52."

done so, that issue is moot. We disagree with Lamar's characterization of the issue that is resolved in the DHA hearing under § 84.30(18) and the effect of that resolution in the statutory scheme.

¶ 26. When DOT issues a removal order based on the illegality of a nonconforming sign and the owner requests a hearing under WIS. STAT. § 84.30(18), the issue at the hearing is whether the sign lost its legal nonconforming status. If the sign is illegal, there are two consequences: DOT may remove it under the authority provided in § 84.30(11) and there is no compensation for its removal. Section 84.30(5)(bm); *see also* WIS. ADMIN. CODE § TRANS 201.10(1). There is no prohibition in the statutory scheme against DOT removing the sign before completion of the administrative and judicial review procedure in § 84.30(18). That is consistent with the fact that DOT also has the authority to remove *lawful* signs pursuant to the State's power of eminent domain. *See, e.g., Vivid, Inc. v. Fiedler*, 182 Wis. 2d 71, 73–74, 512 N.W.2d 771 (1994) (sign owner who removed legal nonconforming sign for highway improvement project, in response to notice from DOT, was entitled to just compensation under § 84.30(6)). DOT's removal of the sign in this case to facilitate the highway project did not render moot the issue whether the sign was an illegal nonconforming sign. That issue must still be resolved because Lamar is not entitled to just compensation if the sign is illegal.

¶ 27. Had Lamar not withdrawn its request for a hearing, the DHA examiner would have determined either that the sign had lost its legal nonconforming status, as DOT had decided, or that the sign had not lost that status. After the judicial review provided by WIS. STAT. §§ 227.52 and 227.58, there would have been a final decision on this point. If DOT prevailed, Lamar

would not have been entitled to any compensation for the sign. On the other hand, if Lamar had prevailed, the measure and procedure for just compensation in WIS. STAT. § 84.30(7) and (8) would have applied. *See Vivid, Inc.*, 219 Wis. 2d at 778–79 (§ 84.30 is the exclusive remedy for determining just compensation for signs meeting the criteria of § 84.30(6), even if the sign is removed because of the State's power of eminent domain and not because of § 84.30).

¶ 28. It is evident that the legislature intended to require that the challenge to a removal order, which necessarily constitutes a challenge to DOT's decision that the sign has lost its legal nonconforming status, be made in a DHA hearing with judicial review of that decision under WIS. STAT. ch. 227. There is no indication in the statutory scheme that DOT's removal of the sign affects the procedure for determining the lawfulness of DOT's removal order. There is also no logical basis for presuming that removal of the sign affects the procedure, since the need for determining the lawfulness of the removal order remains critical to the question whether the owner is entitled to just compensation.

¶ 29. Lamar relies on *Wisconsin Fertilizer Ass'n v. Karns*, 39 Wis. 2d 95, 158 N.W.2d 294 (1968), in which the court held the plaintiffs could bring a declaratory judgment action for a ruling on the legality of the motor vehicle commissioner's determination that their vehicles were not exempt from registration. *Id.* at 99, 107–08. The court rejected the argument that the plaintiffs' exclusive remedy was under WIS. STAT. § 227.06(1) (1967),[14] which provided that an interested person may petition an agency for a declaratory ruling

---

[14] WISCONSIN STAT. § 227.06(1) (1967) is now numbered WIS. STAT. § 227.41. *See* 1985 Wis. Act 182, § 27. All references to § 227.06(1) are to the 1967 version of the Wisconsin Statutes.

208

on the applicability of a rule or statute to a given set of facts. *Id.* at 105, 106–07. The court reasoned that § 227.06(1) "does not provide a method of review of a determination already made but a method of requesting an agency to make a determination." *Id.* at 107.

¶ 30. Lamar asserts that DOT's decision to remove the sign prior to the conclusion of the DHA proceeding is analogous to the motor vehicle commissioner's determination in *Wisconsin Fertilizer Ass'n*, and that Wis. Stat. § 84.30(18), like Wis. Stat. § 227.06(1), does not provide for review of a decision already made. This is not an apt analogy. Even after DOT removes the sign, § 84.30(18) *does* provide a procedure for administrative and judicial review of DOT's decision that the sign was illegal and therefore subject to removal without compensation.[15]

¶ 31. Lamar also contends that the procedure in Wis. Stat. § 84.30(18) is inadequate because DHA is not authorized to award just compensation, the remedy Lamar seeks in this action. This argument assumes that a statutory procedure is inadequate if it does not permit a party to obtain all the relief it seeks in one proceeding for administrative and judicial review, but requires completing that procedure before filing a court action for the "ultimate" relief—here just compensation.

---

[15] The parties debate the relevance of *Nick v. State Highway Commission*, 13 Wis. 2d 511, 518a, 111 N.W.2d 95 (1961). There the court on reconsideration dismissed an action for inverse condemnation because of failure to pursue judicial relief under Wis. Stat. ch. 227 for denial of a highway permit. We do not discuss this case any further because it provides no guidance on the statutory scheme at issue here.

The parties also debate the relevance of *Bear v. Kenosha County*, 22 Wis. 2d 92, 125 N.W.2d 375 (1963). We agree with DOT that this case—which concerns the propriety of a jury award of just compensation—has no bearing on the issues before us.

209

This argument would apply to every sign owner who receives a removal order the owner believes is based on an erroneous decision that the sign is an illegal nonconforming sign. Likely all such owners would prefer to go directly to circuit court seeking just compensation, with DOT raising the illegality of their signs as a defense.[16] However, the legislature has chosen otherwise. The legislature has decided that first a sign owner must challenge the removal order in a hearing before DHA followed by judicial review under Wis. STAT. ch. 227, and only if the owner prevails on the issue of the sign's legality may the owner seek just compensation in the circuit court under § 84.30(7) and (8) for the sign's removal.

¶ 32. The cases that Lamar brings to our attention do not support its argument that Wis. STAT. § 84.30(18) is inadequate simply because Lamar cannot obtain all the relief it seeks in that procedure. Instead, the inadequacy exception has been applied when the statutory procedure is inadequate to afford *any* relief to the party filing the court action. *See, e.g., Wisconsin Fertilizer Ass'n,* 39 Wis. 2d at 105–08 (the statutory procedure claimed to be exclusive does not provide review of the challenged determination already made); *Perkins v. Peacock,* 263 Wis. 644, 649, 658, 58 N.W.2d 536 (1953) (an exclusive appeal remedy would be inadequate if the statutory notice was not given and the aggrieved party did not receive notice until the time for appeal had expired). *See also Kmiec v. Town of Spider Lake,* 60 Wis. 2d 640, 645–46, 211 N.W.2d 471 (1973) (where the claim is that a zoning ordinance is unconstitutional, review by the municipal board is inadequate because the board does

---

[16] Lamar acknowledges that DOT may raise as an affirmative defense in this action the illegality of the sign.

not have the authority to declare the ordinance unconstitutional).

¶ 33. Here the entire statutory scheme provides for a determination on the legality of Lamar's sign in the procedure specified in WIS. STAT. § 84.30(18) and, if the ultimate determination is that the sign is legal, there is a procedure in § 84.30(7) and (8) for obtaining just compensation. This statutory scheme adequately provides Lamar with the means both to challenge a removal order on the ground its sign is legal and to obtain just compensation if that challenge succeeds. We conclude the legislative intent is that, even if DOT removes the sign, the administrative and judicial review provided in § 84.30(18) is the exclusive procedure for challenging a removal order.

¶ 34. Because we conclude the legislature intended the procedure in WIS. STAT. § 84.30(18) to be the exclusive procedure for challenging the removal order, even if DOT removed the sign, we next consider whether there are nonetheless good reasons for not requiring Lamar to complete that procedure before filing this petition for just compensation.[17] Lamar contends that it should not be required to exhaust the procedure under § 84.30(18) because it would still have to file a circuit court action to receive just compensation. This is a restatement of the argument we have already rejected in paragraphs 31–33, *supra*. Lamar can file a petition for just compensation *only if* it prevails in

---

[17] We do not separately address Lamar's argument that it *did* exhaust its administrative remedies because it requested a hearing and DOT's removal of the sign "negated" its quest for an administrative remedy. We have already in substance rejected this argument in concluding that the issue of the legality of the sign remained for DHA to decide after DOT removed the sign.

211

its challenge to the removal order using the procedure established in § 84.30(18). If Lamar does not prevail in its challenge to the removal order, it is not entitled to just compensation.

¶ 35. We conclude that the application of the exhaustion doctrine in this situation fulfills the doctrine's primary purpose of allowing the administrative agency—in this case, DHA—to perform the functions the legislature has delegated to it and employ its special expertise and fact-finding facility. *Metz v. Veterinary Examining Bd.*, 2007 WI App 220, ¶ 13, 305 Wis. 2d 788, 741 N.W.2d 244. In addition, the interests of judicial efficiency are served because there may be no need for an action seeking just compensation. *See id.*

¶ 36. We have considered whether an exception to the exhaustion doctrine is warranted because Lamar has withdrawn its request for a hearing under WIS. STAT. § 84.30(18) and, in view of the sixty-day time limit, is presumably precluded from pursuing its challenge to the removal order. We conclude this does not warrant an exception. Cases recognize that the correct application of the exclusivity doctrine or the exhaustion doctrine may in a particular case have the effect of denying a remedy to persons who have failed to follow the prescribed procedure. *See First Nat'l Bank*, 82 Wis. 2d at 545 n.11. In this case, Lamar continued with the withdrawal of its request for a hearing after having been cautioned by the hearing examiner that, if DOT was correct that § 84.30(18) provided the exclusive procedure, Lamar might be precluded from seeking compensation for the sign. We acknowledge that the hearing examiner stated he knew of no law against Lamar's position and that Lamar could have legitimately viewed the issue as unresolved. Nonetheless, a

reasonable person in Lamar's situation would have understood there was a risk it would not prevail, and Lamar was evidently willing to take that risk. Under these circumstances, we conclude that equitable considerations do not warrant an exception to the exhaustion doctrine.[18]

## CONCLUSION

¶ 37. We conclude the administrative and judicial review provided in Wis. Stat. § 84.30(18) is the exclusive procedure for challenging the legality of Lamar's sign after issuance of the removal order, even though DOT removed the sign. We also conclude that under the statutory scheme a determination under § 84.30(18) that Lamar's sign is legal is a necessary predicate to just compensation for the sign under the statutory scheme. Because Lamar did not exhaust the administrative and judicial review procedure in § 84.30(18) before bringing this action for just compensation and because we conclude no exception from the exhaustion doctrine is warranted, we affirm.

*By the Court.*—Order affirmed.

[18] Lamar also argues in the last section of its brief that a petition for inverse condemnation under Wis. Stat. § 32.10 is not demurrable, citing *Revival Center Tabernacle v. City of Milwaukee*, 68 Wis. 2d 94, 98, 227 N.W.2d 694 (1975). Lamar's position appears to be that, because it invokes § 32.10 in its petition, DOT may not raise the issues of exhaustion and exclusivity except as a defense to just condemnation at an evidentiary hearing under § 32.10. *Revival Center Tabernacle* does not involve Wis. Stat. § 84.30 and we do not find in its analysis any guidance for the issues on this appeal.