COURT OF APPEALS
DECISION
DATED AND FILED

July 22, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2281**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019CV1449

**IN COURT OF APPEALS
DISTRICT IV**

EAGLE POINT SOLAR, LLC AND EAGLE POINT ENERGY 6, LLC,

    PLAINTIFFS-APPELLANTS,

CITY OF MILWAUKEE,

    INTERESTED PARTY,

  V.

PUBLIC SERVICE COMMISSION OF WISCONSIN, REBECCA CAMERON VALCQ, MICHAEL HUEBSCH, ELLEN NOWAK AND WISCONSIN ELECTRIC POWER COMPANY,

    DEFENDANTS-RESPONDENTS.

APPEAL from an order of the circuit court for Dane County: WILLIAM E. HANRAHAN, Judge. *Affirmed.*

Before Blanchard, Kloppenburg, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Eagle Point Solar, LLC, and Eagle Point Energy 6, LLC, (collectively, Eagle Point) appeal the circuit court's dismissal of Eagle Point's declaratory judgment action.   We conclude that the circuit court did not erroneously exercise its discretion in dismissing this action under the exhaustion of administrative remedies doctrine so as to allow the Public Service Commission (PSC) to decide related, and potentially dispositive, issues.[1]   Therefore, we affirm.

## BACKGROUND

¶2     Eagle Point is a solar energy developer.   It constructs, sells, and operates solar photovoltaic systems that convert sunlight into electricity.   In 2018, Eagle Point and the City of Milwaukee (the City) entered into a "Solar Services Agreement" (the Agreement), under which Eagle Point agreed to install, maintain, and partially own solar photovoltaic systems at seven City sites.   The seven sites are within the electric service territory of Wisconsin Electric and Power Company (WEPCO), a utility company.   WISCONSIN ADMIN. CODE ch. PSC 119 (through June 2021)[2] requires owners of distributed generation facilities, such as Eagle

---

[1] Throughout this decision, we take judicial notice of, and rely in part on, documents in the pending proceeding before the PSC. *See* WIS. STAT. § 902.01 (2019-20) (governing judicial notice of adjudicative facts); ***Town of Holland v. PSC***, 2018 WI App 38, ¶30 n.9, 382 Wis. 2d 799, 913 N.W.2d 914 ("the court may take judicial notice of the files of the PSC").   We note that both Eagle Point and the PSC cite to documents on the PSC website and that no party contests that we may rely on these documents.

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] All references to the Wisconsin Administrative Code are to the June 2021 Register unless otherwise noted.

Point's solar photovoltaic systems,[3] to interconnect with the incumbent public-utility infrastructure. *See* WIS. STAT. § 196.496(2) (directing the PSC to promulgate rules establishing standards for the connection of distributed generation facilities to electric distribution facilities); WIS. ADMIN. CODE ch. PSC 119 (establishing these standards). Therefore, in order to perform the Agreement, Eagle Point applied for WEPCO approval to connect Eagle Point's solar photovoltaic systems with WEPCO facilities at each City site. *See* WIS. ADMIN. CODE § PSC 119.04 (setting forth the application process for a distributed generation facility to request "interconnection" with a public utility).

¶3 WEPCO denied Eagle Point's interconnection applications on the grounds that the Agreement constitutes an arrangement for Eagle Point to sell electricity at retail to an existing WEPCO customer, the City, contrary to Wisconsin law prohibiting duplication in electric service by a "public utility." *See* WIS. STAT. § 196.495 (a "public utility" may not, either directly or indirectly, provide electric services to an existing customer of another public utility); WIS. STAT. § 196.01(5) (as relevant here, a "public utility" means a specified entity "that may own, operate, manage or control … all or any part of a plant or equipment, within the state, for the production, transmission, delivery or furnishing of heat, light, water or power either directly or indirectly to or for the public"). Thus, the premise underlying WEPCO's denial was that Eagle Point is a public utility.

---

[3] Implicit in the parties' briefing, and apparently undisputed for purposes of this appeal, is that Eagle Point's solar photovoltaic systems are "distributed generation facilities," as that term is defined under WIS. STAT. § 196.496(1).

¶4      Following WEPCO's denial of Eagle Point's interconnection applications, Eagle Point exercised its right under WIS. ADMIN. CODE § PSC 119.40 to appeal to the PSC.  Eagle Point sought from the PSC:  (1) a declaratory ruling that Eagle Point's performance of the Agreement with the City does not constitute a public utility service offered to or for the public under WIS. STAT. § 196.015, and (2) an order requiring WEPCO to approve the interconnection applications.

¶5      The PSC denied Eagle Point's request to open a docket on its first request, for a declaratory ruling.  Eagle Point did not seek judicial review of that order.  *See* WIS. STAT. § 227.52 (setting forth the process for judicial review of administrative decisions).[4]  The PSC did open a docket on Eagle Point's second request, to investigate whether WEPCO lawfully denied the seven interconnection applications under WIS. ADMIN. CODE § PSC 119.40 (we refer to this docket as "the interconnection proceeding").  The PSC specified that the interconnection proceeding would "not investigate or address the applicability of WIS. STAT. § 196.01(5) to Eagle Point"—that is, the PSC would not determine whether Eagle Point meets the statutory definition of a public utility.  *See* § 196.01(5).

¶6      Eagle Point filed this action in the circuit court against the PSC, its commissioners, and WEPCO, seeking a declaratory judgment and injunctive relief pursuant to WIS. STAT. § 806.04.  Specifically, Eagle Point sought a declaration

---

[4] Eagle Point argues that the PSC order declining to open a docket is not a final reviewable decision, and it cites several cases for the proposition that the PSC has not issued any decision.  *See Waste Mgmt. of Wis., Inc. v. DNR*, 128 Wis. 2d 59, 90, 381 N.W.2d 318 (1986); *Wisconsin's Env't Decade, Inc. v. PSC*, 93 Wis. 2d 650, 658, 287 N.W.2d 737 (1980).  We need not decide the point because Eagle Point did not challenge this PSC order in the circuit court.

that its performance under the Agreement would not render it a public utility within the meaning of WIS. STAT. § 196.01(5); that the PSC has no jurisdiction over Eagle Point under WIS. STAT. § 196.02(1); and that the Agreement "is a valid and enforceable contract." Eagle Point asked the circuit court to "[e]njoin the PSC from attempting to apply to or enforce against Eagle Point any part of [WIS. STAT. §] 196.49 [prohibiting duplication of electric services], and from otherwise attempting to supervise or regulate Eagle Point," and to enjoin both the PSC and WEPCO "from interfering with the performance of the Agreement."

¶7    The PSC and WEPCO filed motions to dismiss, arguing, among other contentions, that Eagle Point had not exhausted its administrative remedies. Following briefing and oral argument, the circuit court granted the motions to dismiss. Eagle Point appeals.

¶8    After submission of the parties' appellate briefs, the PSC provided additional authority to this court:  a PSC order from the interconnection proceeding.  This order grants WEPCO's motion to allow consideration of whether Eagle Point is a public utility under WIS. STAT. § 196.01(5), and clarifies that WEPCO is *not* barred from raising Eagle Point's purported public-utility status as a defense.

¶9    As of the release date of this decision, proceedings before the PSC are ongoing.

## DISCUSSION

¶10    One of the issues pending before the PSC is whether WEPCO properly denied Eagle Point's applications for interconnection on the grounds that Eagle Point cannot legally sell electricity at retail to an existing WEPCO

customer, the City. *See* WIS. STAT. § 196.495 (prohibiting duplication of electric services). This issue is intertwined with the question Eagle Point raised in the circuit court: whether it is acting as a public utility subject to regulation specifically under § 196.495 and more generally under WIS. STAT. ch. 196. Accordingly, as explained below, we conclude that the circuit court did not erroneously exercise its discretion in denying Eagle Point's request for a declaratory ruling because Eagle Point has failed to exhaust its administrative remedies.

### *Standards of Review*

¶11 We review a circuit court's decision to grant or deny declaratory relief for an erroneous exercise of discretion. *Olson v. Town of Cottage Grove*, 2008 WI 51, ¶35, 309 Wis. 2d 365, 749 N.W.2d 211. Thus, we will uphold the decision if the court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Id.* (internal quotation marks and quoted source omitted).

¶12 We likewise review for an erroneous exercise of discretion a circuit court's decision to apply (or not apply) the exhaustion doctrine. *Metz v. Veterinary Examining Bd.*, 2007 WI App 220, ¶¶16-17, 305 Wis. 2d 788, 741 N.W.2d 244. Inherent in this determination, however, is the legal question of

whether, on an undisputed set of facts, the exhaustion doctrine is available. *Id.* We make this determination de novo. *Id.*[5]

¶13 Here the circuit court, in a written order, discussed the PSC's and WEPCO's various arguments in support of their motions to dismiss, including that "the Court may, in its discretion … instruct Plaintiffs to exhaust their administrative remedies." The court found "good cause" for granting the motion—but without directly stating the basis or bases for its decision. In such cases, we independently "search the record for reasons to sustain" the court's exercise of discretion. *See **State v. LaCount***, 2007 WI App 116, ¶14, 301 Wis. 2d 472, 732 N.W.2d 29, *aff'd*, 2008 WI 59, 310 Wis. 2d 85, 750 N.W.2d 780.

### *The Exhaustion Doctrine*

¶14 Wisconsin courts recognize the doctrine of exhaustion of administrative remedies as one "of judicial restraint," "which the legislature and the courts have evolved in drawing the boundary line between administrative and judicial spheres of activity." ***Nodell Inv. Corp. v. City of Glendale***, 78 Wis. 2d 416, 424, 254 N.W.2d 310 (1977); ***Sauk Cnty. v. Trager***, 118 Wis. 2d 204, 210, 346 N.W.2d 756 (1984). This doctrine "is typically applied when a party seeks judicial intervention before completing all the steps in the administrative process." *Metz*, 305 Wis. 2d 788, ¶13. "The purpose of the exhaustion doctrine in this type

---

[5] We have observed that the case law is not always clear on the appropriate standard for reviewing the circuit court's application of the exhaustion doctrine. *See **Metz v. Veterinary Examining Bd.***, 2007 WI App 220, ¶¶16-18, 305 Wis. 2d 788, 741 N.W.2d 244; ***Lamar Cent. Outdoor, LLC v. DOT***, 2008 WI App 187, ¶16 n.8, 315 Wis. 2d 190, 762 N.W.2d 745. For our purposes, it is sufficient to review under the de novo standard whether the exhaustion doctrine applies to Eagle Point's suit and then to review for an erroneous exercise of discretion the circuit court's decision to apply that doctrine.

of case is to allow the administrative agency to perform the functions delegated to it by the legislature without interference by the courts." *Trager*, 118 Wis. 2d at 210. The doctrine "allows the agency to apply its special competence and expertise and to make a factual record." *Id.* at 210-11. "Preventing premature judicial intervention also allows the agency to correct its own error, thus promoting judicial efficiency; and, in the event judicial review is necessary, the complete administrative process may provide a greater clarification of the issues." *Metz*, 305 Wis. 2d 788, ¶13.[6]

¶15    The exhaustion doctrine is not an absolute rule, and "exhaustion is not required in 'exceptional cases' if there are good reasons not to apply it." *Lamar*, 315 Wis. 2d 190, ¶19 (quoting *Trager*, 118 Wis. 2d at 214). "To determine the application of the exhaustion doctrine we must look at the circumstances under which the doctrine arises and the reason for the doctrine, and then balance the advantages and disadvantages of applying the doctrine in the particular case." *Trager*, 118 Wis. 2d at 210. It is "a rule of policy, convenience, and discretion, not a rule regulating the jurisdiction of the court." *Id.* at 211-12. Thus, courts have declined to apply the doctrine where, for example, "the

---

[6] Relatedly, courts may apply the exhaustion doctrine "when a party does not follow the statutorily prescribed procedure for judicial review of an agency decision and seeks judicial review in a different forum or proceeding." *Sauk Cnty. v. Trager*, 118 Wis. 2d 204, 211, 346 N.W.2d 756 (1984). The principle is that, "where a statute specifies a direct method of judicial review of agency action, the method so prescribed is regarded as exclusive." *Id.* at 211. Eagle Point refers to this doctrine as the "exhaustion-exclusivity doctrine," in contrast to what it terms the "exhaustion-finality doctrine" (discussed above as the exhaustion of administrative remedies doctrine). In *Lamar*, we analyzed these as two separate doctrines—the doctrine of exclusive remedy and the exhaustion doctrine—but acknowledged that because of the "considerable overlap" in the policies, the case law does not always clearly distinguish the two. *See Lamar*, 315 Wis. 2d 190, ¶¶18-19 & n. 9. We decide this case narrowly, on what Eagle Point refers to as "exhaustion-finality" grounds.

administrative body does not have the authority to provide the relief sought; the party who failed to exhaust would have no judicial review in circumstances that would be harsh or unfair; [or] the agency has already informed the party of its position on a question of law where the facts are not disputed." *Metz*, 305 Wis. 2d 788, ¶15 (footnotes omitted).

### *Application of the Exhaustion Doctrine to This Case*

<u>As a matter of law, the exhaustion doctrine is an available basis for dismissing Eagle Point's suit.</u>

¶16    To determine whether the exhaustion doctrine applies, we begin by examining the pertinent law. *See Lamar*, 315 Wis. 2d 190, ¶20. The legislature has granted the PSC broad authority, in that the PSC "has jurisdiction to supervise and regulate every public utility in this state and to do all things necessary and convenient to its jurisdiction." WIS. STAT. § 196.02(1); *see City of St. Francis v. PSC*, 270 Wis. 91, 98, 70 N.W.2d 221 (1955) ("The legislature has seen fit to endow the [PSC] with extraordinary power. This is because the members of the [PSC] are experts in the field of utility regulation or they employ experts with particular skills in that field.").

¶17    The legislature has also vested the PSC with the specific authority to adopt standards for the safety, reliability, and service quality of distributed generation (DG) facilities. *See* WIS. STAT. § 196.496(1) (defining DG facilities as certain "facilit[ies] for the generation of electricity with a capacity of no more than 15 megawatts"). Section 196.496 delegates to the PSC the responsibility to "promulgate rules establishing standards for the connection of [DG] facilities to electric distribution facilities" that are "uniform and shall promote the development of [DG] facilities." *See* § 196.496(2). These standards must

"address engineering, electric reliability, and safety concerns and the methods for determining charges for interconnection." *Id.*

¶18 Consistent with the legislature's grant of authority to the PSC, the PSC implemented WIS. STAT. § 196.496 in WISCONSIN ADMIN. CODE ch. PSC 119. This chapter "applies to all DG facilities with a capacity of 15 MW or less that are interconnected, or whose owner seeks to have interconnected, to an electric public utility's distribution system" and "to all electric public utilities to whose distribution systems a DG facility is interconnected, or to which interconnection is sought." WIS. ADMIN. CODE § PSC 119.01. Interconnection "means the physical connection of a DG facility to the distribution system so that" the DG facility may operate while so connected. WIS. ADMIN. CODE § PSC 119.02(20) and (30). Under WIS. ADMIN. CODE § PSC 119.40, the PSC has the authority to adjudicate disputes relating to proposed interconnections.

¶19 Thus, our legislature has envisioned a regulatory process in which the PSC establishes standards for DG-electric distribution facility interconnections and resolves interconnection disputes. And Eagle Point's interconnection proceeding is in fact pending before the PSC. In that proceeding, Eagle Point argues that WEPCO should have approved its interconnection applications. In its defense, WEPCO argues, in part, that it cannot approve the applications because Eagle Point is a "public utility" that seeks to provide a duplicate service to WEPCO customers, contrary to WIS. STAT. § 196.495. WEPCO asserts additional grounds in that proceeding for denying the applications, irrespective of Eagle Point's public-utility status (for example, that Eagle Point Energy 6, LLC is not registered to do business in this state).

¶20     For these reasons, the interconnection proceeding could fully resolve whether Eagle Point may connect to WEPCO facilities.  If this resolution is in Eagle Point's favor, then Eagle Point could carry out the Agreement without further recourse to the PSC or the courts on this matter.  At the very least, the interconnection proceeding could produce a definitive answer from the PSC on whether Eagle Point is a public utility.

¶21     We conclude that the exhaustion doctrine applies to Eagle Point's declaratory judgment action.  Eagle Point indisputably has not "complet[ed] all the steps in the administrative process."  *See Metz*, 305 Wis. 2d 788, ¶13.  As we discuss below, as part of this administrative process, the PSC has committed to apply its expertise to fact-intensive questions, including (potentially) whether Eagle Point meets the definition of a public utility and (necessarily) whether there was *any* basis for WEPCO's denial of its applications.  *See Trager*, 118 Wis. 2d at 210-11; WIS. ADMIN. CODE § PSC 119.09 (providing five reasons why a public utility may refuse interconnection).  If Eagle Point is aggrieved by the PSC's final decision, and appeals, the circuit court could benefit from the PSC's fact-finding and "greater clarification of the issues."  *See Metz*, 305 Wis. 2d 788, ¶13.  Thus, as a matter of law, the exhaustion doctrine was an available basis for the circuit court's dismissal.

¶22     Eagle Point raises two arguments to the contrary, both of them unpersuasive.  First, it contends that the exhaustion doctrine is unavailable to a circuit court when, as here, a complaint raises pure questions of law that the court can decide in the first instance just as easily as the agency.  We reject the legal and factual underpinnings of this position.  Eagle Point characterizes the dispute before the circuit court as solely "about the PSC's jurisdiction"—that is, whether the "the public-utilities statutes … apply (or do not apply) to the … Agreement."  But

Eagle Point ignores the reality that Eagle Point itself seeks a declaration that it "is not and will not be a 'public utility.'" A public utility, again, is an entity "that may own, operate, manage or control … all or any part of a plant or equipment, within the state, for the production, transmission, delivery or furnishing of heat, light, water or power either directly or indirectly to or for the public." WIS. STAT. § 196.01(5)(a). The statute, furthermore, specifies seven categories of entities that are not public utilities by operation of law. Sec. 196.01(5)(a) and (b). Determining the "public utility" question, then, necessarily involves an application of the law to the facts, which itself involves the development of a factual record. Far from being a pure question of law, the "public utility" determination is highly fact-intensive. Our supreme court acknowledged the fact-specific nature of this inquiry long ago in *Cawker v. Meyer*, 147 Wis. 320, 133 N.W. 157, 159 (1911), an opinion that the parties rely on here. *See id.* ("While we find it quite easy to ascertain the true spirit and intent of the [public utilities] law, yet we deem it inexpedient and unsafe to attempt to define in more specific terms than the statute what does and what does not constitute a public utility. Each case will depend upon its own peculiar facts and circumstances, and must be tested by the statute in the light of such facts and circumstances.").

¶23 Furthermore, Eagle Point's legal position is a non-starter. Eagle Point argues that a circuit court *cannot*, as a matter of law, exercise its discretion to apply the exhaustion doctrine when a complaint raises a pure question of law. Eagle Point points to principles of separation of powers, arguing that a court's doing so would be unconstitutional and contrary to our supreme court's decision in *Tetra Tech EC, Inc. v. DOR*, 2018 WI 75, 382 Wis. 2d 496, 914 N.W.2d 21. Eagle Point ignores the fact that we are primarily an error-correcting court without the capacity to overrule precedent—here, a long line of cases recognizing the

12

exhaustion doctrine. *See Trager*, 118 Wis. 2d at 210-14 (discussing case law); *Lamar*, 315 Wis. 2d 190, ¶¶18-20 & n.9 (same); *Cook v. Cook*, 208 Wis. 2d 166, 188-90, 560 N.W.2d 246 (1997) (concluding that this court's "primary function is error correcting" and that only our supreme court may overrule, modify, or withdraw language from binding case law). Nor do we discern in *Tetra Tech* some implicit overruling of exhaustion doctrine precedent. *Tetra Tech* states that courts should not defer to agencies on questions of law—not that courts are *unable*, in their discretion, to permit agencies to make legal findings in the first instance. *See Tetra Tech*, 382 Wis. 2d 496, ¶¶83-84 (lead opinion); *id.*, ¶¶138-42 (Ziegler, J., concurring); *id.*, ¶¶159-63 (Gableman, J., concurring).

¶24 Eagle Point next argues that "[t]his case is not about interconnection"—essentially, that the interconnection proceeding before the PSC has nothing to do with its declaratory judgment action in the circuit court. Even if this position had some merit when Eagle Point first filed suit (because the PSC had declined to determine Eagle Point's public-utility status), the PSC's subsequent and explicit statement that the public-utility issue is now before it negates this argument. It is undisputed that the PSC granted WEPCO's motion to allow consideration of whether Eagle Point is a public utility. Following this decision, the parties squarely raised this argument before the PSC. Eagle Point's public-utility status is now central to the interconnection proceeding.

The circuit court did not erroneously exercise its discretion in applying the exhaustion doctrine.

¶25 Eagle Point argues that, even if the exhaustion doctrine were available to the circuit court, the court nonetheless erroneously exercised its discretion in applying it here. Eagle Point's argument hinges partly on premises that we have already rejected: that "this case raises only questions of law" and

"requir[es] no factfinding." As we explain above, the interconnection proceeding will necessarily require PSC fact-finding and the application of agency expertise. The circuit court presumably agreed with WEPCO's position that it would be prudent to allow the PSC to "complete[] what it has already started, at which point it will have the benefit of the factual and policy background that the [PSC] will have fully developed." We have no basis to conclude that this determination represents an erroneous exercise of discretion.

¶26 Eagle Point further implies that this is one of those "exceptional cases" warranting immediate judicial review. *See Trager*, 118 Wis. 2d at 214. One basis for this assertion is that the PSC has refused to decide its public-utility status. But as previously explained, whatever PSC's stance may have been earlier, the PSC is now entertaining this exact question. Eagle Point's argument on this point is therefore meritless. Eagle Point also argues that the doctrine should not apply because "[t]he underlying merits dispute raises a critical question of statewide importance." This argument cuts both ways, however, because the circuit court may very well have believed that the PSC was specially equipped to address this "critical question" in the first instance. We note, moreover, that the rationales expressed in our precedent for not applying the exhaustion doctrine do not appear to apply here. *See Metz*, 305 Wis. 2d 788, ¶15 (discussing case law). For example, the PSC has the authority to grant the relief Eagle Point seeks (interconnection with WEPCO and a determination of public-utility status), and Eagle Point, if aggrieved, may petition for judicial review. *See id.* Thus, on this record, we find no basis to conclude that the circuit court's deference to the ongoing PSC proceeding constitutes an erroneous exercise of discretion.

## CONCLUSION

¶27    For the reasons stated, we conclude that the circuit court did not erroneously exercise its discretion in dismissing Eagle Point's case on exhaustion grounds, so as to allow the PSC to determine identical or overlapping matters.[7] We therefore affirm.

*By the Court.*—Order affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[7] The PSC and WEPCO also raise the following arguments as independent bases for affirming the circuit court's dismissal:  Eagle Point's suit is duplicative; the circuit court's decision would not terminate the dispute, *see* WIS. STAT. § 806.04(6); the controversy is not ripe; the primary jurisdiction doctrine supports dismissal; and, under principles of sovereign immunity, this suit can only be brought under WIS. STAT. ch. 227.  Because we determine that the circuit court did not erroneously exercise its discretion in applying the exhaustion doctrine, we do not address whether any of these principles also support dismissal. *See **Barrows v. American Fam. Ins. Co.***, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").